Argued December 9, 1908, decided January 5, 1909, rehearing denied February 9, 1909.

## ZIMMERMAN *v.* GRITZMACHER.

[98 Pac. 875; 99 Pac. 1135.]

NUISANCE—PUBLIC NUISANCE—ACTS AUTHORIZED BY ORDINANCE.

1. One cannot be prosecuted by a city for maintaining a public nuisance by operating a public abattoir, which was expressly authorized and established by an unrepealed ordinance of the city, so long as the requirements of the ordinance are observed.

NUISANCE — PUBLIC NUISANCE — ACTS AUTHORIZED BY ORDINANCE— VALIDITY OF ORDINANCE.

2. In a prosecution by a city for maintaining a public slaughterhouse, which was expressly authorized and established by city ordinance, the city cannot urge that the ordinance was void, even though its validity might be open to attack.

MUNICIPAL CORPORATIONS—POLICE REGULATIONS—REGULATING SLAUGHTERHOUSES.

3. The right of a city, pursuant to legislative authority to regulate slaughterhouses or prohibit them within prescribed limits, rests upon the ground that they may become injurious to health or offensive to the public, so as to constitute a public nuisance.

From Multnomah: JOHN B. CLELAND, Judge.

This is a *habeas corpus* proceeding by L. Zimmerman against C. C. Gritzmacher, to obtain the discharge of petitioner from arrest under a warrant issued on an

information charging him with operating and maintaining a slaughter house within the corporate limits of the City of Portland. From an order denying the writ, petitioner appeals. Reversed and remanded with directions to discharge 'petitioner.

Statement by MR. CHIEF JUSTICE BEAN.

This is a *habeas corpus* proceeding to obtain the discharge of the petitioner from arrest under a warrant issued by the municipal court of the City of Portland, on an information charging him with operating and maintaining a slaughter or packing house within the corporate limits of the city, where animals are slaughtered for human food, in violence of a city ordinance.

In 1894 the city, in pursuance of· legislative authority, passed an ordinance making it unlawful for any person to slaughter animals for human food within the city limits, or to erect or maintain a slaughter house therein. While this ordinance was in force and without repealing or amending it, the common council in February, 1896, enacted an ordinance granting petitioner and his assigns the right to establish, conduct, and carry on a slaughter or packing house on certain described property belonging to him within the city limits, under certain conditions and restrictions as to the manner in which the business should be conducted, and declaring that the previous ordinance should not be applied to or affect the establishment or carrying on of the business thus authorized. Immediately upon the passage of this ordinance, and in reliance upon its provisions, the petitioner proceeded to, and did, construct a packing house and other necessary buildings for the slaughtering of animals on the property described therein at a cost in excess of $50,000, and he and his lessees and assigns have ever since operated the same. After the slaughter or packing house had been constructed by the petitioner in accordance with the terms and conditions of the ordinance authorizing him

to do so, the city repealed, or attempted to repeal, such ordinance. The petitioner, however, continued to conduct and operate the plant until November, 1901, when he leased it to the Northwestern Meat Company, and it was operated by that company until September, 1904, at which time, with the consent of petitioner, the lease was assigned to the Pacific States Packing Company, who operated it as the Portland Abattoir until the fall of 1906. While it was being so operated by the Pacific States Packing Company, the city re-enacted the ordinance prohibiting the slaughter of animals within the corporate limits, and in April, 1905, the officers of the company were arrested for violating such ordinance, and were convicted and the judgment affirmed by this court. *Portland* v. *Cook,* 48 Or. 550 (87 Pac. 772: 9 L. R. A. (N. S.) 733). After their arrest, however, and before trial, the common council of the city adopted an ordinance regulating the slaughtering of animals and the inspection of meats intended for human food within the city, in which it is provided generally that all animals intended for food shall be inspected and approved by officers appointed by the city board of health, both before and after slaughtering, and that it shall be unlawful for any person to slaughter, sell, or offer to sell the meat of any animal, except game, unless the same has been so inspected or approved, or bears the inspection mark, stamp, or tag of the bureau of animal industry of the United States Department of Agriculture. Section 6 of this ordinance reads as follows:

"That the Pacific States Packing Company be known as the 'Portland Abattoir,' where animals may be taken for slaughter and be inspected, and that not more than the following prices may be charged and collected by the person or corporation who are now or who may hereafter be operating the Portland Abattoir, or such other place or places as may be fixed by the board of health, for slaughtering animals intended for human food within the City of Portland, to-wit: Cattle, fifty (50) cents;

veal calves with skin on, fifteen (15) cents, with skin off, twenty-five (25) cents; hogs, sheep and goats, fifteen (15) cents. For cold storage of same: Cattle, fifty (50) cents; veal calves, hogs, sheep and goats, fifteen (15) cents, respectively. All animals at the above Abattoir will be inspected by the Government Meat Inspector stationed there."

This ordinance has never been repealed, but is still in force and effect. Some time after its passage the Pacific States Packing Company surrendered possession of the plant, then operated by it, to the petitioner, and he continued to operate the same until August, 1907, when he was arrested for slaughtering animals within the corporate limits of the city, in violation of the ordinance enacted prior to the passage of the abattoir ordinance. He thereupon instituted this proceeding for his discharge, and, the judgment of the court below being adverse to him, he appeals.                          REVERSED.

For appellant there was a brief over the names of *Mr. A. E. Clark, Mr. John H. Hall* and *Mr. W. R. McGarry,* with oral arguments by *Mr. Clark* and *Mr. Hall.*

For respondent there was a brief and oral arguments by *Mr. Milton W. Smith* and *Mr. John P. Kavanaugh.*

Opinion by MR. CHIEF JUSTICE BEAN.

1. There is no allegation or claim that the slaughter or packing house operated and maintained by petitioner is, in fact, a nuisance, either on account of its location or the manner in which it is being conducted. On the contrary, it is alleged in the petition, and for the purpose of this case admitted to be true, that such packing house is situated in a sparsely settled portion of the city, and that it is in no way injurious to the health or offensive to the public. The contention of the city is apparently that it has plenary power under its charter to exclude slaughter houses from the corporate limits,

whether they are, in fact, a nuisance or not, and that the previous grant or license to petitioner to construct and maintain a slaughter house on his premises is no barrier to the exercise of this power. The petitioner, on the other hand, contends that the slaughtering of animals for human food is a lawful business, which the city may regulate and control, but cannot prohibit, when, in fact, it is not a nuisance, and that the grant or license to him cannot be revoked or recalled by the city without showing that the slaughter house or packing plant erected in pursuance thereof has, in fact, become a nuisance, either on account of an increase in the population in the vicinity of the plant or the manner in which it is operated. But this case does not call for a decision of any of these questions, interesting as they are. The slaughter or packing house of petitioner was at the time of his arrest being maintained by the consent and authority of the municipality. He cannot be prosecuted by the city for doing that which it expressly sanctions. By section 6 of the abattoir ordinance, the Pacific States Packing Company, which was then in possession of and operating the Zimmerman plant, was designated as the "Portland Abattoir," where animals may be taken for inspection and slaughter, thus expressly authorizing the slaughtering of animals at such place. As long as this ordinance remains unrepealed, the city cannot maintain a criminal prosecution against one who is observing its provisions and doing that which it authorizes.

2. It is argued on behalf of the city that the ordinance is void because it creates a monopoly, delegates legislative and arbitrary power to the city board of health, and imposes unreasonable and burdensome restrictions upon the right to slaughter and sell meats within the city, etc. Some of these objections would merit serious consideration if urged by parties other than the city whose interests are affected thereby. But the city cannot do so in support of a prosecution for doing that which the ordinance authorizes.

3. The right of a state or municipality by virtue of authority granted to it by the State to regulate slaughter houses or to prohibit their erection within certain prescribed limits is because they are or may become injurious to health or offensive to the public, and therefore a public nuisance. But, when express legislative authority is given for the erection and maintenance of such business, it cannot become such a nuisance; for, as said by Mr. Justice HAND, in *Harris* v. *Thompson*, 9 Barb. (N. Y.) 364, "It is a legal solecism to call that a public nuisance which is maintained by public authority." See, also, Wood, Nuisance, §§ 753, 757. Whether the ordinance granting the petitioner the right to erect and maintain a slaughter house was valid, and, if so, whether it can be repealed and the authority withdrawn, after he has expended a large sum of money in its furtherance thereof, as long as the business is not a nuisance, in fact, were questions ably debated at the hearing, but are not necessary to a decision of this case.

For the reasons given, the judgment of the court below is reversed, and the cause remanded, with directions to discharge the petitioner.                     REVERSED.

---

Decided February 9, 1909.

## ON PETITION FOR REHEARING.

[98 Pac. 1135.]

MR. JUSTICE BEAN delivered the opinion of the court.

Counsel is in error in assuming that the court held or intended to hold that a municipal officer could not, in a proper proceeding, question the validity of a city ordinance. The holding is that a city cannot maintain a criminal prosecution against one for maintaining a nuisance in doing that which it expressly authorizes, as long as the ordinance, authorizing the act complained of, remains unrepealed. This is not an action or suit between Zimmerman and Gritzmacher, but is a *habeas corpus*

proceeding, instituted by Zimmerman to obtain his discharge from arrest under a warrant issued on a complaint, filed by the city, charging him with maintaining a slaughter house within the corporate limits, which an ordinance authorized him to do.

REHEARING DENIED.