Tommy GOLDSTON, Petitioner,

v.

CITY OF HARRIMAN, Respondent.

Supreme Court of Tennessee.

April 24, 1978.

Joe H. Walker, Harriman, for petitioner.

J. Frank Qualls, Harriman, for respondent.

## OPINION

BROCK, Justice.

Defendant was fined $50.00 for violating a city ordinance prohibiting the sale of beer. The Court of Appeals affirmed and we granted certiorari.

The City of Harriman, the self-styled "Utopia of Temperance," both by its charter and by municipal ordinance, purports to restrict the sale of beer within its geographical limits. Article II, Section 18(12) of the City's charter makes it unlawful to sell or tipple any intoxicating liquor within one mile of a school or church or within 1000 feet of an occupied dwelling. Harriman City Ordinance 2-201 prohibits outright the sale of beer within the City.

No factual dispute exists regarding the alleged offense itself. On November 15, 1975, the day he officially opened his convenience food market located within the City of Harriman across the street from a city school, defendant sold to the chief of police a six-pack of beer.

Defendant's challenge to his conviction and fine is based upon the acknowledged fact that eight other establishments were

openly selling beer within the City of Harriman without interference from municipal authorities on the date of his arrest. Asserting that he had a valid permit to sell beer within the City, defendant argues that his arrest represents selective enforcement of the laws in violation of the Fourteenth Amendment of the United States Constitution and of Article XI, Section 8 of the Tennessee Constitution.

The City, however, seeks to distinguish the defendant's status and justifies his arrest by its insistence that defendant's beer permit was invalid because issued by the Roane County Beer Board, without authority of the City of Harriman.

The question of the scope of the authority of the Roane County Beer Board has its origin in the annexation, in 1961, of a large area adjacent to the City of Harriman, known today as South Harriman. Prior to that time there were no establishments selling beer within the City. The annexed territory, however, included seven beer establishments that had previously operated under valid permits issued by the Roane County Beer Board which, by virtue of the annexation and the City's prohibition of the sale of beer, stood to become unlawful overnight.

The annexation of the territory surrounding the City of Harriman was contested in the Chancery Court of Roane County. As a result of this litigation, the parties entered into a compromise agreement, approved by the court. Section 7 of this consent decree provided:

"It is recognized that this settlement presents something of a problem with reference to the continued sale of beer at properties within the areas annexed and by persons who were already licensed by Roane County for this purpose, when the annexing ordinance in question was passed, in view of the Charter of the City of Harriman and ordinance relative thereto. In view of the decision of the Supreme Court of Tennessee in the case of *Sparks v. Beer Committee of Blount County,* reported in [207 Tenn. 312] 339 S.W.2d 23, there is some doubt that the annexation herein in question could be applied ipso facto and retroactively so as to eliminate these licenses and businesses already established when the annexation ordinance was passed. Accordingly, the City of Harriman agrees to leave the matter of the continuation [or] revocation of said licenses to the jurisdiction of the Roane County Beer Board, their licenses having been granted by said Board; *except that the City of Harriman does not agree . . . to the issuance of any further or additional beer license or licenses or additional property or properties for the sale of beer within the areas annexed."* (Emphasis added.)

Section 1 of the consent decree provided that the annexation would be effective January 15, 1963.

Also, in 1966 the Roane County Beer Board issued a beer permit to an individual to sell beer at the Holiday Inn which, at that time, was located outside the city limits of Harriman. But, in 1967 the City effected a second major annexation of surrounding territory including the Holiday Inn. Because the Holiday Inn, like the seven beer establishments located in the territory annexed in 1961, was licensed to sell beer before it became a part of the City, it too was permitted by municipal authorities to continue the sale of beer.

According to uncontradicted testimony introduced at trial, since the date of the Chancery Court decree authorizing the continuation of the sale of beer in the annexed territory by persons already licensed to sell beer, the Roane County Beer Board has issued new licenses for the sale of beer to *successor owners* of several beer establishments that were annexed in 1961.

Thus, prior to defendant's arrest, permits issued by the Roane County Beer Board authorizing the sale of beer in the City of Harriman, despite the City's ostensible prohibition against its sale, fell into these categories: (1) permits whose validity was continued by the Chancery Court decree after the initial annexation, (2) a permit whose validity was continued after a second annexation under the *rationale* of the Chan-

cery Court decree, and (3) permits issued since the first annexation to new owners of beer establishments that were authorized to sell beer at the time they were annexed.

On August 7, 1975, the Roane County Beer Board issued a beer permit to defendant for the sale of beer at Goldston's Quik-Shop, a new outlet for the sale of beer located within the city limits of Harriman across the street from a public school.

In apparent response to the Board's issuance of this permit to the defendant, the City Council of Harriman adopted a resolution on September 9, 1975, reciting the history of the City's agreement with the Roane County Beer Board regarding beer permits and stating that "the parties did not desire to prohibit those persons holding valid beer permits from selling beer at the same locations when the annexation ordinance became effective," and that "it was never at any time the intention of the City of Harriman, Tennessee, to grant or give to the Roane County Beer Board the authority or jurisdiction to issue a new beer permit or license to any person for a business located within the corporate limits of the City of Harriman, Tennessee." By this resolution the City Council decreed that "any authority or jurisdiction of the Roane County Beer Board to issue a beer permit or license to any person for any business located within the corporate limits of the City of Harriman, Tennessee, is hereby revoked and rescinded."

At trial, the assistant chief of police testified that he bought a six-pack of beer from the defendant on November 15, 1975, at defendant's package store. He testified that the store was located within the corporate limits of Harriman and across the street from a school. On cross-examination the police officer testified that the arrest was made pursuant to express instructions of the Mayor and two police commissioners and that he had been instructed not to bother other beer establishments selling beer within the City. He further testified that one of the police commissioners had followed him for half a day to make sure he made the arrest.

We conclude that the defendant has failed to demonstrate an unconstitutional or otherwise impermissible discrimination by the City in the application and enforcement of its beer regulations and, therefore, affirm the judgments of the lower courts.

It is fair to state that confusion and uncertainty respecting the regulation of the sale of beer within the corporate limits of the City of Harriman has reigned since the entry of the above-mentioned compromise decree in the Chancery Court for Roane County dealing with the 1961 annexation of South Harriman. But, as we understand it, following the 1961 annexation and the entry of the Chancery Court decree in which the City of Harriman agreed to recognize the validity of beer permits for outlets located within the annexed territory which had already been issued by the Roane County Beer Board and were then outstanding and in which the City " . . . agrees to leave the matter of the continuation or revocation of said licenses to the jurisdiction of the Roane County Beer Board, . . . ." it has been the policy of the City with respect to the sale of beer within the corporate limits that such sales were unlawful, except pursuant to a permit which had been previously issued by the Roane County Beer Board and was in full force and effect at the time of annexation and the entry of the Chancery Court decree on January 15, 1963.

Although such appears to have been the new policy of the City respecting the sale of beer within the corporate limits, no new ordinance or amendatory ordinances were adopted reflecting such a policy. Nevertheless, we are of the opinion that the City, by reason of the agreement incorporated into the Chancery Court decree, became estopped to enforce its ordinance prohibiting the sale of beer within the City limits against those who held valid beer permits from the Roane County Beer Board at the time of the 1961 annexation. *Zimmerman v. Gritzmacher*, 53 Or. 206, 98 P. 875, 1135 (1909); 56 Am.Jur.2d *Municipal Corporations* § 421 (1971).

However, this estoppel does not benefit or protect the defendant; he was not one of those holding a valid permit for the sale of beer issued by the Roane County Beer Board prior to the 1961 annexation for a location within the annexed territory.

Neither does the conduct of the City recognizing the continued validity of the Holiday Inn beer permit which had been issued by the Roane County Beer Board prior to annexation of the location in 1966 furnish any aid to the defendant. We do not find it necessary to decide whether the City was bound to recognize the continuing validity of the Holiday Inn permit after the 1966 annexation became effective, *see Sparks v. Beer Committee of Blount County,* 207 Tenn. 312, 339 S.W.2d 23 (1960); suffice it to say that we are of the opinion that to recognize the continued validity of such a permit under the circumstances would not be an arbitrary or unreasonable action.

Failure of the City to enforce its ordinance prohibiting the sale of beer within the City limits against the Holiday Inn or those who held permits at the time of the 1961 annexation does not, in our opinion, amount to unequal and discriminatory administration of the ordinance "with an evil eye and an unequal hand" which, of course, is not permissible under the equal protection clauses of the Fourteenth Amendment and of Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution. See *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Berry v. Arapahoe and Shoshone Tribes,* 420 F.Supp. 934 (D.C.1976).

The same is true with respect to the third category of permit holders, *viz.,* successor owners of establishments which were duly licensed by the Roane County Beer Board at the time of the 1961 annexation. The original owners had died or sold the establishments to the successor owners. It does not appear that the City was aware of the fact that ownership of these establishments had changed or that the Roane County Beer Board had issued new permits to the successor owners.

Finally, it is clear that the City of Harriman has not authorized the Roane County Beer Board to issue a beer permit to one in the circumstances of the defendant. Thus, the agreement incorporated in the compromise Chancery decree specifically provided:

" . . . except that the City of Harriman does not agree . . . to the issuance of any further or additional beer license or licenses or additional property or properties for the sale of beer within the areas annexed."

We conclude that the City has not in any way estopped itself from enforcing its ordinance against the defendant.

The judgment of the Court of Appeals and of the trial court are affirmed and costs taxed against the petitioner.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.