Leslie C. THOMPSON, Appellant,

v.

CITY OF HARRIMAN et al., Appellees.

Supreme Court of Tennessee.

June 26, 1978.

Elmer F. Rich, Rockwood, for appellant.

J. Frank Qualls, Harriman, for appellees.

OPINION

HENRY, Chief Justice.

This is an appeal from a decision of the Chancery Court of Roane County upholding the City of Harriman's denial of appellant's application for a permit to sell beer. Appellant submits that the Chancellor erred in denying his application "because of the arbitrary, capricious and discriminatory enforcement of the Charter and Ordinances of the City of Harriman."

I.

The history of the events giving rise to appellant's claim of discriminatory enforcement are fully related in a recent opinion of this Court, *Goldston v. City of Harriman*, 565 S.W.2d 858 (Tenn.1978). A brief review of these facts, however, is not inappropriate.

Ordinance No. 2–201 of the City of Harriman states that it is unlawful to sell or store beer within the city, and beer was not sold within Harriman's corporate limits until the early 1960's. In 1961 the city annexed an area where several businesses had been selling beer under permits issued by the Roane County Beer Board. In order to end litigation contesting the annexation, the city entered into a compromise settlement, approved by the court, allowing those establishments selling beer at the time of annexation to continue to do so under the outstanding permits. A similar arrangement occurred when the city annexed the area in which the local Holiday Inn, also engaged in the sale of beer under a Roane County permit, was located. The City of Harriman itself has *never* issued to anyone a permit allowing the sale of beer within its boundaries.

Over the next several years, these establishments continued to operate under their county permits. In addition, when some of these businesses were sold, or passed to new hands because of their owners' deaths, the county board re-issued permits to the new proprietors. In 1975, however, the Roane

County Beer Board issued a permit, unrelated in any way to a permit that had been outstanding at the time of annexation, to the owner of a new establishment in the annexed area. The city refused to recognize this permit and "revoked" by resolution any authority of the county beer board to issue a permit to any business located within the city. This resolution was accepted by the county.[1]

After these events, appellant, who had originally applied to the county board for a permit, sought one from the city council. After a full hearing on the matter, the council noted that to grant appellant's application would violate not only Ordinance 2–201, but also provisions of the city charter,[2] and denied his application.

## II.

During consideration of this appeal, the issue has arisen of whether, since the passage of Chapter 105 of the Public Acts of 1961, a municipality has the power to regulate the sale of beer to the point of prohibition, as the City of Harriman does with certain noted exceptions.

Counties, as opposed to cities, have never had such authority and do not now possess it. The 1961 Act, now codified as a part of Sec. 57–205, T.C.A., does not apply to cities; and we directly, correctly, and unanimously so held in *Richards v. Lewisburg Alcoholic Beverage Commission*, 543 S.W.2d 852 (Tenn.1977). We said:

§ 57–205 relates to counties only. Id. at 853.

Reference to the derivation of Sec. 57–205, T.C.A., will demonstrate the correctness of this holding. It originated as a part (first 6 paragraphs) of Sec. 10, Ch. 69, Public Acts of 1933. This portion of the Act shows on its face that it applies to counties only. It was carried into the Code Supplement of 1950 as Sec. 1191.14 and into our present Code as Sec. 57–205, with the catch line reflecting its contents as follows:

License to sell *outside of town or city limits.* (Emphasis supplied).

Sec. 57–208, T.C.A., governs sale within incorporated cities and towns.

The caption of Chapter 105, Acts of 1961, reads as follows:

AN ACT to amend Section 57–205 and 57–209 Tennessee Code Annotated, relating to the sale of beer.

It will be noted that it does not purport to amend Sec. 57–208, T.C.A., relating to municipalities.

Omitting the enacting clause, Section 1 of the 1961 Act provides:

That Section 57–205 Tennessee Code Annotated be and the same is hereby amended [etc.].

Thus, it is clear that the 1961 Act had no effect on the power of municipalities.

We went into the history of "the very pronounced difference between the authority possessed by cities and counties," in our recent case of *Howard v. Willocks*, 525 S.W.2d 132 (Tenn.1975). We recognized that municipalities have broad powers in the regulation of the sale of beer, *Gatlinburg Beer Regulation Committee v. Ogle*, 185 Tenn. 482, 206 S.W.2d 891 (1948); that municipalities are given absolute discretion in the matter of regulating and controlling beer, *Ketner v. Clabo*, 189 Tenn. 260, 225 S.W.2d 54 (1949); and that their regulation may properly extend to outright prohibition, *De Caro v. City of Collierville*, 213

1. The owner of the new business to which the county permit had been issued was arrested for violation of the city ordinance. His conviction was upheld by this Court in *Goldston v. City of Harriman, supra.*

2. The City Charter, set out in the Private Acts of 1917, Chapter 165, Article 2, § 18, Subsection 12, provides in part: "It shall be unlawful for any person to sell or tipple any intoxicating liquors, including wine, ale, and beer as a beverage in the City of Harriman within one mile

of any schoolhouse, . . . where a school is kept, whether the school be in session or not, or within one mile of a church building in which people usually congregate for religious worship or within one thousand (1,000) feet of any dwelling-house occupied by a family." The location of appellant's establishment is within 200 feet of a public school, 225 feet of a church and 50 feet of a dwelling-house occupied by a family.

Tenn. 254, 373 S.W.2d 466 (1963); *Grubb v. Mayor of Morristown*, 185 Tenn. 114, 203 S.W.2d 593 (1947). See also *Barnes v. City of Dayton*, 216 Tenn. 400, 392 S.W.2d 813 (1965), and *Howard v. Christmas*, 180 Tenn. 519, 176 S.W.2d 821 (1944). *Howard* is actually the first case to hold that municipalities may regulate beer to the point of prohibition, although the source of this rule is generally attributable to *Grubb, supra*.

As we held in *Howard v. Willocks, supra*, speaking with reference to counties, the effect of the passage of Chapter 105, Public Acts of 1961, was that:

> [T]he Legislature mandated that an applicant for a beer permit, who complies with all the legal requirements, shall be entitled to have such license or permit issued to him. 525 S.W.2d at 136.

■ But Tennessee cities, being unaffected by the 1961 Amendment, have the continuing right to regulate to the point of outright prohibition. The reason for this disparity of concept is covered in *Howard v. Willocks, supra*.

### III.

■ We turn now to the question raised by appellant, namely whether under the circumstances related earlier the City of Harriman arbitrarily and unlawfully discriminated against him in the enforcement of its charter and ordinance. This is essentially the same question considered by this Court in *Goldston v. City of Harriman, supra*.

In that case we held that the city was estopped to enforce its ordinance forbidding the sale of beer against those holding valid county permits at the time of annexation but that this estoppel did not benefit one who did not hold a valid permit prior to annexation. Additionally, we expressed the opinion that the recognition of the Holiday Inn permit was not "an arbitrary or unreasonable action."

The Court continued:

> [f]ailure of the City to enforce its ordinance prohibiting the sale of beer within the City limits against the Holiday Inn or

those who held permits at the time of the 1961 annexation does not, in our opinion, amount to unequal and discriminatory administration of the ordinance "with an evil eye and an unequal hand" which, of course, is not permissible under the equal protection clauses of the Fourteenth Amendment and of Article I, Section 8 and Article XI, Section 8 of the Tennessee Constitution. See *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Berry v. Arapahoe and Shoshone Tribes*, 420 F.Supp. 934 (D.C.Wyo. 1976).

The same is true with respect to the third category of permit holders, viz., successor owners of establishments which were duly licensed by the Roane County Beer Board at the time of the 1961 annexation.

The judgment of the trial court is Affirmed.

FONES, COOPER and HARBISON, JJ., concurring.

BROCK, J., dissenting.

BROCK, Justice, dissenting.

I respectfully dissent.

The record presents no dispute of the material facts. It is stipulated by the City that the plaintiff had duly filed an application for a beer permit with the city council which was satisfactory in all respects and that the plaintiff is a person of good moral character and would be entitled to a permit were it not for the fact that Ordinance No. 2–201 purports to prohibit outright the sale of beer within the City.

Despite this ostensible prohibition of the sale of beer within the City of Harriman, beer has in fact been sold at seven or more different establishments within the City for the past 16 years following annexation by the City in 1961 of the area of South Harriman. Prior to that time, beer was not sold within the corporate limits of the City. However, in connection with the annexation, the City entered into a compromise decree settling the litigation brought to contest the annexation ordinance in which it agreed that seven beer-selling establish-

ments within the area being annexed could continue to operate under permits then outstanding which had been issued by the Roane County Beer Board, but the City did not agree that the Roane County Beer Board should issue any further permits for the sale of beer within the City.

Since 1961 beer has been sold at the seven establishments mentioned either by the original permit holders or successor owners of those establishments. In addition, since 1966 beer has also been sold at the Holiday Inn which was annexed by the City in 1966, a permit to sell beer at that establishment having been issued by the Roane County Beer Board prior to its annexation.[1]

Although obviously the City was faced with a new situation with respect to the sale of beer within its limits after the 1961 annexation, it has never enacted a comprehensive ordinance regulating the sale of beer within the City nor has it enacted any ordinances to amend its old ordinance which purports to prohibit outright the sale of beer; neither has it established a board to handle applications for beer permits, as provided by T.C.A., § 57–208(a). Consequently, the appellant complains in his brief:

"It would appear that the City of Harriman has taken the approach that if they ignore it, it will go away."

Inescapably, the issue is presented whether the City's ordinance prohibiting outright the sale of beer within the City is a valid enactment and, thus, furnishes a lawful basis for denial of the plaintiff's application for a permit.

In 1933 the General Assembly enacted Chapter 69 of the Public Acts of 1933, codified as T.C.A., §§ 57–201—57–223, terminating the "noble experiment" in Tennessee. This Act proclaimed:

"It shall be lawful in this state to transport, store, sell, distribute, possess, receive and/or manufacture beer . . ."

The Act authorized the sale of beer within the cities as well as the counties of this state, subject to the provisions of the Act. Despite the fact that the Act contained no language whatever purporting to authorize cities or counties to prohibit outright the sale of beer within their boundaries, this Court, in early decisions, erroneously in my view, interpreted the law to permit such prohibition. *Ketner v. Clabo, Mayor*, 189 Tenn. 260, 225 S.W.2d 54 (1949); *Grubb v. Morristown*, 185 Tenn. 114, 203 S.W.2d 593 (1947); *Howard v. Christmas*, 180 Tenn. 519, 176 S.W.2d 821 (1944). Thus, in *Sandford v. Pearson*, 190 Tenn. 652, 231 S.W.2d 336 (1950) this Court stated its theory of the 1933 Act as follows:

"This general law does not confer any absolute right on the citizens of Tennessee, to manufacture, sell, transport or possess beer, but is a local option statute, (citation omitted) whereby the governing bodies of cities and the Quarterly County Courts of counties, may regulate the manufacture, sale, transportation and possession of beer even to the extent of prohibition." *Id.* at 655, 656, 231 S.W.2d at 337.

An important change of the law in this respect occurred with the enactment by the General Assembly of Chapter 105 of the Public Acts of 1961. The following provision of that statute is pertinent:

"Any applicant seeking license or permit under this Section and who complies with the conditions and provisions of this Section shall have issued to him the necessary license or permit and in the event said license or permit is refused, the applicant shall be entitled to a hearing on his application for the issuance of a license or permit. The refusal to grant a license or permit, or the refusal to grant a hearing upon a person's application for a license or permit may be reviewed by the Circuit or Chancery Court in the manner as authorized under Section 57–209 [Tennessee Code Annotated]."

---

1. In 1975 Mr. Tommy Goldston obtained a permit from the Roane County Beer Board to sell beer at a place of business which was not one of the eight establishments above-mentioned, but the City proceeded against him for violation of the City ordinance and his conviction and punishment were upheld in an unreported decision of this Court.

Of course, this enactment was soon challenged in the courts, resulting in the decision of this Court in *Fentress County Beer Board v. Cravens*, 209 Tenn. 679, 356 S.W.2d 260 (1962) in which the Court interpreted the new Act and upheld its validity and laid down its construction of the 1933 Act *as amended* by the new 1961 Act above quoted. The facts in the *Fentress County* case were quite similar to those presented in the case at bar. Thus, it was admitted by the Board that the plaintiff had filed an application for a permit which was in proper form and fully complied with the law in all respects and that he was a person of good moral character. The only reason offered by the Board members for refusing to issue the permit to the plaintiff was that

".  .  . they were opposed to the sale of beer and would not issue a permit to anyone." *Id.* at 681, 356 S.W.2d at 261.

Because, in my opinion, the decision in the Fentress County case should control the disposition of the case at bar, I quote further from that opinion:

"Chancellor Officer found that the facts stated in the petition were true; that petitioner's application complied with all the requirements of the law and he was entitled to have the Board issue him the permit; and that in refusing to do so, they acted 'illegally, arbitrarily, capriciously and without any legal right or authorization.' He accordingly entered a decree sustaining the petition and directing defendants to issue the permit to petitioner.

\*    \*    \*    \*    \*    \*

"Our statute (Acts 1933, ch. 69, now T.C.A. § 57–201) legalized the manufacture and sale of beer in Tennessee. But if provided no one could engage in such business without first obtaining a permit and a license from the local authorities (the city, if the business was to be therein, if outside the city, the quarterly court), and left a large discretion to such authorities in issuing and revoking permits. (Citations omitted.)

\*    \*    \*    \*    \*    \*

"Thus, this Act [referring to the amendatory act, Chapter 105, Public Acts of 1961] expresses the legislative intent to amend the statute so as to provide that an applicant for a license or permit, who complies with all the legal requirements, shall be entitled to have such license or permit issued to him; and that if the same is refused, he shall have a right to have the board's refusal reviewed by the statutory writ of certiorari, or certiorari in lieu of an appeal, 'with a trial *de novo*,' under the procedure outlined in T.C.A. §§ 27–901 through 27–913.

\*    \*    \*    \*    \*    \*

"The Legislature had plenary power to prohibit the business of manufacture and sale of beer absolutely, or to legalize such business and license and regulate it as it saw fit, and to give an applicant a legal right to a permit on complying with the conditions prescribed, and a right to a review of the board's refusal of such permit by the statutory writ of certiorari.

\*    \*    \*    \*    \*    \*

"The Act gives an applicant a legal right to a hearing and to issuance of a permit upon compliance with the prescribed conditions.  .  .  .

"For these reasons, we think the Act is not unconstitutional, but is valid; and that the decree of the Chancellor in so holding was correct and it is accordingly affirmed." *Id.* at 681, 682, 685, 687, 688, 356 S.W.2d at 261, 262, 263.

In my opinion, the enactment of Chapter 105 of the Public Acts of 1961 and the decision of this Court in the *Fentress County* case, *supra*, terminated any authority which counties and cities were thought to have prior thereto to prohibit outright the sale of beer within their jurisdictions. There have been two or three observations in opinions of this Court since 1961 to the effect that *cities* in the exercise of the power given them by T.C.A., § 57–208, to *regulate* the sale of beer within their boundaries may totally prohibit such sales, but an examination of the facts in those cases will disclose that such statements have been *dicta* rather than decisions. *See*

*DeCaro v. Collierville*, 213 Tenn. 254, 373 S.W.2d 466 (1963). The instant case is the first since 1961 which has presented the issue squarely to this Court.

There is no question but that cities have much broader power to *regulate* the sale of beer within their borders, T.C.A., § 57–208, than do counties in the area outside municipalities, T.C.A., § 57–205. This additional grant of power to regulate is granted to cities by the following language:

> "(a) All incorporated cities and towns in the state of Tennessee are authorized to pass proper ordinances governing the issuance and revocation of licenses for the storage, sale, manufacture and/or distribution of such beer and/or other beverages as herein prescribed within the corporate limits, providing a board of persons before whom such application shall be made, but the power of such cities to issue licenses shall in no event be greater than the power herein granted to counties, but cities and towns may impose additional restrictions, fixing zones and territories and providing hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide." T.C.A., § 57–208.

This Court has held that under this grant of power cities and towns are possessed with a broad discretion in the matter of the regulation and control of the sale of beer by proper ordinances, *Richards v. Lewisburg Alcoholic Beverage Commission*, Tenn., 543 S.W.2d 852 (1977); *Barnes v. Dayton*, 216 Tenn. 400, 392 S.W.2d 813 (1965), so long as such regulations are reasonable and non-discriminatory, *DeCaro v. Collierville, supra; Case v. Carney*, 213 Tenn. 597, 376 S.W.2d 492 (1964). Nevertheless, broad as this power to regulate undoubtedly is, it is not the power to impose absolute prohibition. The power to *regulate* is not the power to *prohibit entirely*.

It is axiomatic that cities and towns have no power beyond that granted to them by the legislature and the cities and towns of this state have been granted no authority to absolutely prohibit the sale of beer within their limits.

I would hold that the ordinance of the City of Harriman which purports to totally prohibit the sale of beer within the city limits is unauthorized by the general statutes of this state, T.C.A., § 57–201, *et seq.* and, therefore, invalid. I, therefore, dissent from the decision of the majority.