Ralph E. WATKINS, Petitioner-Appellee,

v.

Finde NAIFEH, Mayor the City of Mason, Wayne Hamby, Clarence Malone, G. T. Stegall, W. M. Williamson, Jr., and Lee Clark, Jr., Board of Aldermen of the City of Mason, Respondents-Appellants.

Supreme Court of Tennessee,
at Jackson.

June 28, 1982.

James S. Wilder, III, Somerville, for respondents-appellants.

Keith V. Moore, Memphis, for petitioner-appellee.

## OPINION

DROWOTA, Justice.

The issues in this case concern the validity of an ordinance passed by the City of Mason which required that establishments which sold beer be a certain distance (200 feet) from churches and schools; that the distance be measured from closest property lines; and that existing licensed locations be exempt from the coverage of the ordinance. The trial court held that requiring distance to be measured between property lines rather than between buildings was invalid; and that there was one way in which the distance could be measured between Watkins' building and the nearest church, with a result of over 200 feet. The court thus held that Watkins was entitled to a permit and further that he should be issued a temporary license pending the board's appeal to this Court. We reverse the judgment of the trial court and hold that issuance of a temporary permit is unlawful.

Ralph Watkins purchased property facing U.S. Highway 70 in Mason in the summer of 1978 (although he did not actually receive a deed until December). During September and October, he had fill dirt put on the site and thus exercised incidents of ownership. He indicated to various town officials that he was putting up a car wash and washerette, which he actually did.

On November 13, 1978, the Mayor and Aldermen, who were also the Beer Board, passed a new beer ordinance, Ordinance No. 102, which provided as follows:

(a) No person, firm or corporation shall store, offer for sale, or sell beer as herein defined within the corporate limits of Mason, Tennessee, unless the place of business or establishment at which same is stored, offered for sale, or sold shall have received a permit therefor issued by the beer board of the Town of Mason.

(b) No permit shall be issued if the premises wherein the beer be sold is 200 feet or less from a church or school. This distance to be measured from closest property lines and not from building to building.

(c) This ordinance shall not affect those businesses which have valid permits on the dates of its passage and further would not affect said locations if they should change ownership in the future.

A year and a half later, in June, 1980, Watkins began to build a convenience store on the lot. There had been some delays: First, a sewer was not run to the property until May, 1980. Second, a lot next to the original one, which lot Watkins bought in May, 1980, was zoned Residential. The indications were that Watkins was going to build the store on this lot, and the zoning was changed at his request to Commercial. However, he built on the original lot, which had always been zoned Commercial, after all. Third, he started building without having obtained a building permit, but was allowed to continue building as soon as he received the permit. Watkins made much of these matters, apparently trying to show that the Town Fathers intended to discriminate against him. However, all of these problems appeared to have innocent explanations. The trial court seemed to agree and to treat these allegations as irrelevant to the central issue.

After the convenience store was completed, he indicated to the Mayor and Aldermen in various conversations that he wanted to start selling beer there for off-premises consumption. They told him that as the Ordinance existed, a beer permit could not be issued to him because (1) immediately east of his lot, separated by a 30-foot street, was the property line of the First Baptist Church; and (2) immediately south of his property, again separated only by the 30-foot street, was the property of the Cedar Grove Baptist Church. The Cedar Grove property was next to the back side of Watkins' property; the front of Watkins' store faced north, to Highway 70.

The Mayor willingly called a special public meeting on whether or not the Ordinance should be repealed. Watkins submitted his formal application for a beer permit on December 8, 1980, and the meeting was held on the 18th. There, after discussing the Ordinance, one member of the public voted to retain it, about ten abstained, and about seventeen (including Watkins and his wife) voted to repeal it. According to the testimony of the Vice-Mayor, who had presided at the meeting, the Ordinance had originally been passed after complaints by citizens and members of other churches who were angry about permits being issued to stores across the street from churches and schools. Most of the people who attended the meeting on December 18 did not live or vote in Mason so the vote taken that night did not change the belief of the Mayor and Board of Aldermen that the people of Mason wanted the Ordinance to remain as it was.

Thus, at their next regular meeting on January 12, 1981, they voted unanimously to keep the Ordinance. They then voted to deny Watkins his permit because his property line was less than 200 feet from the property lines of the two churches. They wrote Watkins the next day. A hearing on the permit had previously been scheduled for January 14, and the Mayor told him that he was still welcome to the hearing. Watkins' attorney declined on his behalf, saying that this would be pointless.

Other evidence brought out at the trial showed the following:

1. Joe Ward had a store where beer was sold, directly across the street from a church. His permit was issued in September, 1978, a month before the Ordinance was passed, and thus was within the exception in the Ordinance for existing businesses. It was the issuance of this permit which apparently directly led to the passage of the Ordinance.

2. A Mr. Buchanan had a store directly across the street from Mason Elementary School. He had had his permit since before the Ordinance. After the Ordinance was passed, the Beer Board had approved the

issuance of a permit for that same location to one K. C. Arnett, who was going to buy Buchanan's business. This permit would also have come within the exception in the Ordinance for locations previously licensed. (The permit was never issued, because Arnett did not buy the business.)

3. Keith Buchanan, son of the above Mr. Buchanan, purchased a service station next door to his father's store, and also very close to the elementary school. That location had previously been licensed, so Keith Buchanan's license came within the exception.

4. Since the passage of the Ordinance, two permits had been issued, both to licensees who met the distance requirement. Watkins' was the only application which had been denied. There was no evidence of discrimination against Watkins, because it was testified that there was other commercially-zoned property in Mason where he could have built the store and received a permit; and that there was no reason to want to deny a person a beer license, since a fourth of the town's revenues came from beer taxes.

5. There was a long row of cafés which sold beer and which were located in town across from City Hall. The Mayor owned a ⅕ interest in a grocery store, near City Hall, which had had a permit since 1969. The store had moved next door to its old location, but the owners neglected to apply to have their permit changed. The court, however, felt that this was excusable neglect and did not amount to discriminatory application of the Ordinance. The Mayor did not vote at the January 12, 1981, meeting on keeping the Ordinance.

Watkins petitioned the circuit court for a writ of certiorari to review the Beer Board's denial of his permit. The trial court held as follows: 1. That the language defining how distances should be measured "conflicts with the state law" and that portion of the City Ordinance was null and void. 2. That the proper measurement should be from building to building. 3. That the distance between the closest points of Watkins' building and Cedar Grove Baptist Church was less than 200 feet; however, it was 205 feet from the closest point of the church to the front corner of Watkins' building, which faced away from the church. The trial court did not address, and thus left valid, the language of the Ordinance providing an exception for persons and locations which had existing valid licenses prior to passage of the Ordinance. The Mayor and Aldermen appeal the court's first two rulings and his order that a permit be issued. Watkins urges us to find that the exception in the Ordinance is discriminatory and illegal.

■ We shall first address the power of a city to restrict the sale of beer to locations whose property lines are at least 200 feet from the property line of the nearest church or school. It has been held by this Court numerous times that municipalities are given extremely broad powers to regulate the sale, storage, manufacture, etc. of alcoholic beverages within their boundaries. This power extends even to the power to ban such sales or to place an absolute limit upon the number of licenses or permits issued. *E.g., Thompson v. City of Harriman,* 568 S.W.2d 92 (Tenn.1978); *Goldston v. City of Harriman,* 565 S.W.2d 858 (Tenn.1978); *DeCaro v. City of Collierville,* 213 Tenn. 254, 373 S.W.2d 466 (1963); *Ketner v. Clabo,* 189 Tenn. 260, 225 S.W.2d 54 (1949), and cases cited therein. The regulation by cities of beer sales is governed by TCA § 57–5–108, which provides in pertinent part:

All incorporated cities and towns in the state of Tennessee are authorized to pass proper ordinances governing the issuance and revocation of licenses for the storage, sale, manufacture and/or distribution of such beer and/or other beverages as herein prescribed within the corporate limits, providing a board of persons before whom such application shall be made, but the power of such cities to issue licenses shall in no event be greater than the power herein granted to counties, but cities and towns may impose additional restrictions, *fixing zones and territories* and providing hours of opening and clos-

ing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide. (Emphasis added.)

▪ In other words, a city does not have more power than a county to *issue* licenses, but has more power to place *restrictions* upon the issuance of licenses. The restrictions which a county may impose are set out in TCA § 57–5–105. Subsection (f) allows Class "A" counties to

> forbid the sale of beer within three hundred (300) feet of a residential dwelling, measured from building to building, provided the owner of the residential dwelling appears in person before the county beer board and objects to the issuance of such permit or license. This provision shall apply only to land which is unzoned and shall not apply to locations where beer permits or licenses have been issued prior to the date of adoption of such a resolution by the county legislative body, or to an application for a change in the licensee or permittee at such locations.

Additionally, § 57–5–105(a)(3) allows the county legislative body to forbid storage, sale or manufacture of beer at places within 2,000 feet of a school, church or other place of public gathering.

Thus, there are two instances in which a county may restrict the location of beer establishments. The statute defines the types of buildings protected by the zoning, and specifies the distances which may be set.

Watkins argues that a requirement that measurements be made from building to building must be read into § 57–5–108, under which Ordinance No. 102 was drafted. Section 57–5–105(f) specifically requires such a method of measurement. Our opinion in *Ewin v. Richardson,* 217 Tenn. 534, 399 S.W.2d 318 (1966) construed the word, "places" in § 57–5–105(a)(3) to refer to buildings rather than property lines or driveways, and struck down a Davidson County resolution which would have required measurement from property lines. Watkins argues that *City of Murfreesboro v. Davis,* 569 S.W.2d 805 (Tenn.1978) ex-

pressly makes the *Ewin* construction of the word "places" binding upon cities acting under § 57–5–108. In *Murfreesboro,* we said,

> The Chancellor also held that the City could not redefine "school" and "public meeting place", but held that it could define the *method of measurement* contrary to the definition in *Jones v. Sullivan County Beer Board,* [200 Tenn. 301, 292 S.W.2d 185 (1956)], and *Serv-U-Mart, Inc. v. Sullivan County,* [527 S.W.2d 121 (Tenn.1975)]. Terms that have established definitions by a combination of statute and case law must be given uniform application by the cities and counties of this State in exercising the powers granted them by the Legislature to regulate the sale of beer. The power to "otherwise specifically provide[d] by statute" a method of measurement resides in the Legislature, not the cities and counties of this State. The fact that cities have been granted wider discretionary powers than counties by T.C.A. § [57–5–108] in the area of fixing zones and territories, providing hours of opening and closing and such other rules and regulations as will promote public health, morals and safety does not authorize municipal ordinances conflicting with these established definitions.

*Id.* at 808 (emphasis added).

The *Murfreesboro* case does not support Watkins' position in the case at bar. In that case, Murfreesboro followed the 2,000-foot rule, and denied beer licenses to two applicants because their establishments did not comply with the rule. The applicants countered by charging that three businesses having licenses were clearly less than 2,000 feet from at least one church, school or place of public gathering. It is assumed that the licenses to these three businesses were originally issued at a time when the 2,000 foot rule was in effect.

The City admitted that the proper method of measurement when such licenses had been issued, had been the "straight-line method," established by this Court in *Jones v. Sullivan County Beer Board, supra,* and

*Serv-U Mart, Inc. v. Sullivan County, supra.* On June 4, 1976, the City amended its ordinance to require that measurement be made " 'by way of the closest route between same over public streets and not crossing any property lines.' " The City argued that this amendment retroactively cured all violations. We held that it did not, in the language quoted above. The power to fix what the restricted zones should be, did not include the power to replace the straight-line method of measurement with a convoluted, arbitrary method in order to validate the City's own violations of its ordinance.

The City of Mason has not attempted to circumvent the straight-line method of measurement. It has merely exercised its express statutory power to "fix zones" by stating the distances which shall be required and defining the points to which the straight-line method of measurement shall be applied. The City could easily have used buildings as points and provided for a greater distance than the 200 feet specified in Ordinance No. 102, and it is impossible to distinguish the result which obtains under the Ordinance as it was passed.

■ What we have said hereinabove also applies to the trial court's use of a measurement from the closest point of Cedar Grove Baptist Church to the front (not the closest) corner of Watkins's store in arriving at a distance of over 200 feet between the *buildings*, after determining that measurement had to be between buildings. This decision on the part of the trial court resulted in an arbitrary method of measurement and constituted departure from the standard, accepted measurement between the closest points in question. By arbitrarily choosing any point on Watkins' store which would result in a distance of over 200 feet, the trial court violated the holding in *City of Murfreesboro v. Davis, supra.* If a line were drawn 200 feet from the closest corner of the church, it would cut through a large portion of Watkins' building. Even if measurement had to be between buildings rather than between property lines, the closest point on Watkins' building was shown to be less than 200 feet from the church, and he still would not have been entitled to a permit.

■ We shall briefly address Watkins' contention that he has been the victim of discrimination in the application of Ordinance No. 102. A distance requirement which has been discriminatorily applied is no longer valid, *City of Murfreesboro v. Davis, supra; Seay v. Knox County Quarterly Court,* 541 S.W.2d 946 (Tenn.1976); *Serv-U-Mart, Inc. v. Sullivan County, supra.* However, Ordinance No. 102 excepts from its provisions persons and locations which had licenses issued before the passage of the Ordinance. TCA § 57–5–105(f), quoted above, contains the same language, *requiring* a county to except such persons and locations from the 300-foot requirement. That wording was expressly held valid by this Court in *Claiborne County Beer Board v. Poore,* 556 S.W.2d 87 (Tenn.1977). Considering the broader powers of a city to regulate the sale of beer therein, even to the point of prohibition, discussed *supra,* the City of Mason certainly had the authority to include such an exception in its Ordinance.

■ Nor was the valid Ordinance applied in a discriminatory way. All of the licenses mentioned by Watkins as evidence of discrimination clearly and unquestionably came within the exception. Two *new* permits had been issued under the Ordinance, but these had been to businesses which complied with the terms thereof. There were other commercial areas within Mason where Watkins could have placed a store and obtained a permit, which would have met the distance requirement between property lines. The City of Mason had no reason to want to discriminate against anyone or deny anyone a permit, because about one-fourth of the City's revenues came from beer taxes. There is not a shred of evidence supporting the discrimination claim.

■ The City asks us to hold that it was error for the trial court to order that a license be issued to Watkins pending the outcome of this appeal. TCA § 57–5–109 governs review and appeals of orders by

beer boards. Subsection (f) makes this section the sole remedy and exclusive method of review of any order, including refusal or failure to grant a license or permit. The decree of the court which reviews the order on writ of certiorari may be appealed to this Court. Under subsection (h), if the trial court supersedes an order of a board *revoking* a license, the trial court's final judgment shall remain in force until this Court decides the appeal. The section does not address the issue in this case, of the effect of the trial court's holding that a board's refusal to issue a permit was invalid or illegal.

However, the effect of subsection (h) is to maintain the status quo as far as a licensee or permittee is concerned. That is, he had a license which was then revoked, with the revocation being superseded and the license kept in effect by the supersedeas. Applying the same logic, we hold that an applicant who has been denied a permit is *not* entitled to a temporary permit when the trial court has reversed the board and the board has appealed to this Court. This leaves the applicant in the same position as that in which he was before the beer board.

Our holdings in this case dispose of Watkins' request that we find this appeal frivolous and award damages. The judgment of the trial court is reversed. Costs of this appeal shall be taxed to the appellee.

Reversed and remanded.

HARBISON, C.J., and FONES, COOPER and BROCK, JJ., concur.