IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 15, 2002 Session

**HARPER ENTERPRISES, LLC, ET AL. v.
CITY OF BEAN STATION, TENNESSEE, ET AL.**

**Appeal from the Circuit Court for Grainger County
No. 7240     Richard R. Vance, Judge**

**<u>FILED DECEMBER 30, 2002</u>**

**No. E2002-01734-COA-R3-CV**

The City of Bean Station ("the City") denied the application of the plaintiff ("the applicant")[1] for a permit to sell beer for off-premises consumption. The applicant filed a petition for certiorari, naming the City[2] and seeking a writ of mandamus to compel it to issue the requested permit.[3] On cross motions for summary judgment, the trial court granted the City summary judgment. The applicant appeals. It contends that the City, "by actions and/or inaction," has caused its beer ordinance, which limits beer permits within the municipality to two, to be invalid. In the alternative, it contends that the City "has engaged in discriminatory, arbitrary and capricious application of the ordinance." We vacate the trial court's judgment and remand for further proceedings.[4]

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Richard C. Jessee and Lori L. Jessee, Morristown, Tennessee, for the appellants, Harper Enterprises, LLC, and Joe Harper.

---

[1] There are actually two plaintiffs. Because the plaintiff Joe Harper is the 99% majority owner, general manager, and CEO of the plaintiff Harper Enterprises, LLC, we will refer to the plaintiffs in the singular as "the applicant."

[2] Suit was filed against the City of Bean Station and the Bean Station Beer Board. For ease of reference, we will refer to them collectively as "the City."

[3] We will use the words "permit" and "license" to mean the same thing, *i.e.*, a right to sell beer as authorized by a governmental entity.

[4] Oral argument was heard in this case on November 15, 2002, at Knoxville Fulton High School, as part of the Court's C.A.S.E. (**C**ourt of **A**ppeals **A**ffecting **S**tudent **E**ducation) project.

Nathan D. Rowell, Knoxville, Tennessee, and Steven Douglas Drinnon, Dandridge, Tennessee, for the appellees, the City of Bean Station and the Bean Station Beer Board.

**OPINION**

I.

The City was incorporated on November 4, 1996. On March 24, 1997, it enacted a beer ordinance limiting the number of permits that could be issued to two:

> Limitation on Number of Permits. The number of licenses for the sale of beer shall be limited to 2. Provided that all requirements of this chapter are complied with, all existing permits for the sale of beer within the [city] limits of [Bean Station] at the date of the passage of this ordinance shall continue to be renewed. A new permit may be issued to a qualified purchaser of an existing establishment in which a permit is now held for the sale of beer, and the permit used only within the establishment or building purchased.

Bean Station, Tennessee, Ordinance No. 0-01-97 § 2-110 (1997). When the ordinance was enacted, there were two locations within the new city limits selling beer for off-premises consumption. These two locations were issued the two permits authorized by the ordinance.

II.

The Stop & Go Texaco Gas Station and Food Mart ("the Stop & Go Texaco") is located at 524 Highway 25-E in the City. Apparently, the owner of that establishment failed to pay the privilege tax due the City for 2001 and the City considered the establishment's City-issued permit to sell beer for off-premises consumption "void/expired February 2001 for failure to pay taxes."

The applicant purchased the Stop & Go Texaco at a foreclosure sale on February 23, 2001. On the next day – February 24, 2001 – the applicant applied to the City for the issuance of a beer permit. The City denied the application in the spring of 2001.[5]

At an earlier time, in May, 1998, the City had annexed an area of property adjacent to its boundaries. There is little in the record about the annexation. As pertinent to the matter now before the Court, the City's answer to one of the applicant's interrogatories is material:

> In May 1998, the City annexed property which contained four (4) entities or persons holding beer licenses, which had been issued by

_____

[5]At one place in the record, the date of denial is reflected as April 24, 2001, while at another place, it is stated to be May 3, 2001. The exact date is not material.

Grainger County. Since these four entities/persons held valid Grainger County beer licenses upon annexation, the City treated the four (4) entities'/persons' with additional licenses as "grandfathered."

There is proof in the record that the permits issued to the four newly-annexed locations were issued by the Bean Station City Clerk at the direction of the Mayor without the involvement of the City's Beer Board. Interestingly enough, one of the annexed properties was the Stop & Go Texaco site, which was later to be purchased by the applicant at foreclosure.

After the permits were issued for the four annexed properties, there were six locations in the City with permits to sell beer for off-premises consumption. When the applicant sought its permit, there were five permits outstanding, since the permit for the Stop & Go Texaco by that time had been declared "void/expired" by the City.

The applicant argues that the City, by issuing the four permits to the annexed properties at a time when there were two existing permits in the City, rendered its ordinance void. In the alternative, the applicant argues that it should be issued a permit because of the City's discriminatory application of its beer ordinance.

The City argues that the newly-annexed properties were "grandfathered." In the alternative, it argues that "even if the Bean Station ordinance is found to be discriminatorily enforced, the City has the right to restore the validity of the ordinance through attrition." The City points out that all applications for beer permits *filed* since the beer ordinance was enacted have been denied.[6]

The trial court concluded that the applicant was not entitled to a permit to sell beer for off-premises consumption and, consequently, granted the City summary judgment.

III.

The applicant raises two issues on appeal:

> 1. Did the City render the two-permit limitation in its beer ordinance invalid by issuing permits to four businesses that had Grainger County beer licenses when they were annexed into the City?
>
> 2. If the two-permit limitation has not been rendered invalid, has the ordinance, nevertheless, been applied in a discriminatory fashion so as to preclude the City from enforcing the limitation against the applicant?

---

[6]In addition to denying the subject application, the City, on October 27, 1997, denied the application of Bi-Lo Market No. 26.

-3-

IV.

The trial court determined that the City's action with respect to the annexed businesses did not render the two-permit limitation invalid. It also held that there was no evidence of discriminatory application of the subject ordinance. It reached these conclusions of law based upon what both sides acknowledge are undisputed material facts. Hence, we must decide anew if these material facts conclusively show that the City is entitled to summary judgment. *See* Tenn. R. Civ. R. 56.04.

V.

It is clear beyond any doubt that a city has the power "to place an absolute limit upon the number of licenses or permits issued [for the sale of beer]." ***Watkins v. Naifeh***, 635 S.W.2d 104, 107 (Tenn. 1982). A permit to sell beer does not create a property right in the permittee. ***Needham v. Beer Bd. of Blount County***, 647 S.W.2d 226, 231 (Tenn. 1983). "'A license to sell liquor [or beer] is not a contract by right of property but is merely a temporary permit to do that which would otherwise be unlawful.'" ***Needham***, 647 S.W.2d at 230 (quoting ***McClellan v. State***, 199 Tenn. 60, 64, 282 S.W.2d 631, 633 (1955) (bracketing in ***Needham***).

The Tennessee Supreme Court has recognized in several cases the power of cities to control the sale of beer within their boundaries. However, it is clear that this power must be exercised by way of a validly-enacted ordinance. In ***Brooks v. Garner***, 566 S.W.2d 531 (Tenn. 1978), the City of Pulaski denied the appellant's request for a permit to sell beer for off-premises consumption. ***Id.*** The "sole basis for denial of the permit was the opinion of the members of the Beer Board that Pulaski already had a sufficient number of outlets for the sale of beer." ***Id.*** The Supreme Court noted that Pulaski "[had] not enacted an ordinance limiting the number of beer permits which may be outstanding in the City." ***Id.*** In the absence of an ordinance setting the number of beer permits to be issued in Pulaski, the Supreme Court concluded that the Beer Board acted in an arbitrary and capricious manner when it denied the appellant's application for a beer permit. ***Id.*** at 532. The Supreme Court said that if a city was going to limit the number of beer permits, it had to do so by ordinance, noting that

> [i]t is a fundamental goal of our system of government that, to the extent possible, we be governed by laws rather than by men.

***Id.***

The Supreme Court has addressed a city's response to annexed properties that held validly-issued county beer permits at the time of the annexation. In ***Thompson v. City of Harriman***, 568 S.W.2d 92 (Tenn. 1978), the Supreme Court was faced with an ordinance that prohibited the sale of beer within the city limits of the City of Harriman. ***Id.*** In that case, the Supreme Court held that there was no discriminatory enforcement of the City's ordinance prohibiting the sale of beer within the city limits of Harriman when, *in settling litigation contesting the annexation by the City,*

> the city entered into a compromise settlement, approved by the court, allowing those establishments selling beer [under a county permit] at the time of annexation to continue to do so *under the outstanding permits.*

*Id.* at 92 (emphasis added).  The Supreme Court pointed out that

> [t]he City of Harriman itself has *never* issued to anyone a permit allowing the sale of beer within its boundaries.

*Id.*  (emphasis in original).

The cases make it clear that a city can pass an ordinance carving out an exception to the general provisions of its beer ordinance in order to accommodate pre-existing non-conforming uses.  *See, e.g., Watkins*, 635 S.W.2dd at 109 ("Considering the broader powers of a city to regulate the sale of beer therein, even to the point of prohibition,..., the City of Mason certainly had the authority to include such an exception in its Ordinance.").

In *Neece v. City of Johnson City*, 767 S.W.2d 638 (Tenn. 1989), the Supreme Court, in a case involving an annexation of property into the City of Johnson City, held that a city, by ordinance, could deny "the holders of county beer licenses, upon annexation, the right to transfer...from one location to another" even though that right was accorded the license holders within the city.  *Id.*  At the time of the annexation, the plaintiff/property owner was the holder of a license issued by Washington County to sell beer for off-premises consumption.  *Id.*  While the court referred to the City's issuance of a "'grandfathered' license," *id.* at 639, the issue of whether the City was *legally required* to permit the sale of beer on the newly-annexed property does not appear to have been raised in that case.  *Neece* is also different from the instant case in another important respect.  In *Neece,* prior to the annexation, Johnson City had amended its beer ordinance to specifically address licenses for businesses that thereafter would be annexed into the City.  *Id.* at 638.  No such amendment was enacted in the case at bar.

## VI.

In the instant case, the City did not pass an ordinance excluding the newly-annexed properties from its two-permit limit.  Had it done so, the case authority seems to indicate that such an ordinance would have been valid.  *See Watkins*, 635 S.W.2d at 109; *Neece*, 767 S.W.2d at 639.  Instead, in the face of an ordinance limiting beer permits to two, the City chose to ignore the limit and authorize newly-annexed properties, *under the auspices of the City*, to sell beer within the limits of the City.  This raises an issue that apparently was not raised below; or, if raised, was not fully developed at the trial level: When the City annexed properties that had validly-issued Grainger County licenses to sell beer, was the City legally compelled to issue Bean Station permits to these locations in view of the fact the two permits authorized by the City's beer ordinance were then outstanding?  This serious issue was not argued in the parties' briefs and does not seem to have been presented to the trial court.

## VII.

One issue that was raised and discussed by the parties merits our attention at this juncture. The City asserts in its brief that "even if the Bean Station ordinance is found to be discriminatorily enforced, the City has the right to restore the validity of the ordinance through attrition." It then asserts that it has shown its intent to do so by denying both applications filed with it since the ordinance was passed.

The proposition stated by the City, but in a somewhat different factual scenario, is found in the Supreme Court case of *City of Murfreesboro v. Davis*, 569 S.W.2d 805 (1978):

> Restoration of the validity of a distance ordinance can only be achieved by revocation or other elimination, *such as attrition*, of the discriminatorily-issued permits and licenses.

*Id.* at 808 (emphasis added). *See also Needham,* 647 S.W.2d at 231. It is clear, however, that "[d]iscriminatory enforcement of a beer permit distance ordinance cannot be rectified by post facto amendments." *City of Murfreesboro*, 569 S.W.2d at 808.

The City reads these authorities too broadly. They do not mean that a discriminatorily-enforced ordinance is valid so long as a municipality is tying to rectify the wrongs that it has committed in the past. The cited cases simply mean that the validity of an ordinance can be *restored* by attrition and other means. The word "restore" in this context means to *bring back* the validity and/or enforceability of an ordinance, where those attributes *have been lost* by illegal application of the ordinance's provisions. Assuming, without deciding, that the City's ordinance is now invalid or cannot be enforced against the applicant because of past discriminatory application, these consequences cannot be avoided by *possible* attrition, *i.e.*, a reduction in the number of outstanding beer permits, at some point in the future. Of course, once a discriminatory enforcement is rectified by revocation or attrition, the once-invalid ordinance, assuming it has not been repealed by action of the municipality and is still otherwise "on the books," is once again valid and enforceable; but in the interim, it is not.

## VIII.

We have concluded that the record before us does not conclusively show that the City is entitled to summary judgment. While the facts in the record, such as they are, are undisputed, there are no detailed facts regarding the annexation of the Grainger County properties or the circumstances under which they were brought into the City. We hold that the facts surrounding the annexation should be fully developed in order to address the question posed above. *See* Tenn. Code Ann. § 27-3-128 (2000). This case appears to raise an issue of first impression in this state. Since we are an appellate court, we believe this issue should be developed and addressed at the trial level first, based upon relevant statutory and case authority and such other authority as may have a bearing on the stated issue.

IX.

The judgment of the trial court is vacated.  Costs on appeal are taxed to the appellees, City of Bean Station and Bean Station Beer Board.  This case is remanded to the trial court for further proceedings, consistent with this opinion.

_____
CHARLES D. SUSANO, JR., JUDGE