IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2002 Session

## TENNESSEE SPORTS COMPLEX, INC., v. LENOIR CITY BEER BOARD and GONDOLIER OF LENOIR CITY, INC. D/b/a THE GONDOLIER

**Direct Appeal from the Chancery Court for Loudon County**
**No. 9988     Hon. Frank V. Williams, III., Judge**

**FILED JANUARY 8, 2003**

**No. E2001-02481-COA-R3-CV**

The Trial Court revoked appellant's permit to sell beer in Lenoir City.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

A. Wayne Henry, Loudon, Tennessee, for Appellant.

Robert G. Hinton, Lenoir City, Tennessee, for Appellee.

**OPINION**

In this action, the Trial Court Revoked Gondolier of Lenoir City, Inc.'s, ("Gondolier") permit to sell beer, and Gondolier has appealed.

Lenoir City's municipal ordinance prohibits the sale of beer within 300 feet of a hospital, church, school, or other place of public gathering.[1]

---

[1]The Lenoir City Beer Ordinance § 8-211 provides: "In no event will a permit be issued authorizing . . . the sale of beer within 300 feet of any hospital, school, church or other place of public gathering.  The distance shall be measured in a straight line from the nearest point on the property line upon which sets the building from which the beer will be sold to the nearest point on the property line of the hospital, school, church or other place of public gathering.

The relevant facts are not in dispute. Gondolier is an Italian style restaurant located on Highway 321 North, in Lenoir City, and the Sports Complex property is located directly across the road from the Gondolier. The Sports Complex property is situated on top of a hill and set back from the highway. In front of the Sports Complex and fronting the highway is the Victory Ford dealership leased from the Sports Complex, a parking area and a car detailing shop is on the back of the property.

The Sports Complex is a 35,000 sq. ft. privately owned for profit facility, comprised of a private health club, daycare, indoor soccer arena, concessions, and hosts a local league during soccer season. The daycare occupies 73% of the facility's area, and accounts for 43% of its income. There are separate entrances for the daycare and health club, and children are not permitted in the health club area. The daycare is licensed by the State and subject to all applicable rules and regulations for daycare, fire codes and handicap accessibility. The enrollment is approximately 125 children during the school year and 155 during the summer. Daily attendance averages approximately 85 children on a given day. In addition to the daycare services, the Sports Complex also provides services for approximately 40 to 50 home-schooled children. The public is welcome to use the fenced-in playground when the daycare is not in operation. The Center has established security policies so that only authorized persons are permitted to enter the daycare area to visit or pick-up children.

The parties stipulated that the distance between the Gondolier and the Sports Complex is 169 feet, as measured from property line to property line. It is 243 feet from the restaurant to the rear of the Victory Ford Dealership, and is 512 feet from the Gondolier Building to the entrance of the daycare. It was also stipulated that Weigel's property (actually an undeveloped hayfield at present) was issued a beer permit and its location is less than 300 feet from the National Guard Armory on Old Highway 95. The evidence established that the Armory's primary mission is military that supports the U.S. Army and to train and house the National Guard. This facility is available for rental for some public events, such as a circus or carnival, or private parties. The facility may be rented only by a signed contract agreeing to observe all the standards and requirements listed therein for its use. There is an alcohol use policy in the contract, but the Commander has some discretion in issuing contracts. The Armory is not open for people to freely use, and the right is reserved to rent only to a person or groups that are deemed to be respectful to the government and military. Some areas of the Armory are never accessible to the public, and the frequency of use by public events varies from twice a month to none, in some years.

The Trial Court ruled the Tennessee Sports Complex is a place of public gathering, and is entitled to protection of the ordinance, and that the ordinance requirement that the distance be measured from property line to property line does not conflict with State law. Further, that the National Guard Armory is not a place of public gathering that would invalidate the ordinance for discriminatory enforcement.

The review of the Beer Board decision is *de novo*. *McCarter v. Goddard*, 609 S.W.2d 505 (Tenn. 1980), and our standard of review of the Trial Court's findings of fact in granting or

denying a permit is *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. *City of Memphis Alcohol Comm'n v. Randall Memorial Freewill Baptist Church, Inc.*, 550 S.W.2d 657, 659 (Tenn. 1977). Conclusion of law, however, are afforded no presumption of correctness. *Union Carbide Corp. V. Huddleston*, 854 S.W.2d 87 (Tenn.. 1993).

Gondolier argues that the Sports Complex is not a place of public gathering because it is a mixed-use facility, operates for profit and charges fees for all uses, and the daycare is a controlled access facility with security check points. None of these facts negates authority holding that a daycare center, including those privately owned, are places of public gathering. Daycare centers are considered places of public gathering "of a like sort to schools and churches", *Wright v. State,* 106 S.W.2d 866 (1937); *United Methodist Church v. Loudon County Beer Bd. et al.,* 1998 Tenn. App. Lexis 509, No. 03A01-9710-CH-00477. *Also see Tenn. Attorney Gen. Op. 97-060,* AG Lexis 53 (May 1, 1997); *Tenn. Attorney Gen. Op. 98-069,* 1998 Tenn. AG Lexis 69 (Mar. 25, 1998).

Tennessee Code Annotated § 57-5-105(b)(1) provides in pertinent part:

> No beer will be sold except at places where such sale will not cause congestion of traffic or interference with schools, churches, or other places of public gathering, or otherwise interfere with public health, safety and morals, the county legislative body having the right to forbid such storage, sale or manufacture at places within two thousand feet (2,000') of such places of public gatherings in its discretion. . . .

This statute has been held applicable to cities. *Thompson v. City of Harriman*, 568 S.W.2d 92 (Tenn. 1978); *Richardson v. Lewisburg Alcoholic Beverage Comm'n,* 543 S.W.2d 852 (Tenn. 1977). Nevertheless, pursuant to Tenn. Code Ann. § 57-5-106(a), cities have the authority to pass ordinances more restrictive than the standards in § 105 applicable to counties:

> All incorporated cities, towns and Class B counties in the State of Tennessee are authorized to pass proper ordinances governing the issuance and revocation or suspension of licenses for . . . the sale . . . of beer within the corporate limits of the cities and towns and within the general services districts of Class B counties outside the limits of any smaller cities as defined in § 7-1-101(8) . . . but the power of such cities, towns and Class B counties to issue licenses shall in no event be greater than the power herein granted to counties, but cities, towns and Class B counties may impose additional restrictions, fixing zones and territories and provide hours of opening and closing and such other rules and regulations as will promote public health, morals and safety as they may by ordinance provide. . . .

> Tenn. Code Ann. § 57-5-106(a).

Courts generally construe regulatory provisions for the sale of intoxicating liquor liberally in favor of the places or institutions they are designed to protect, and strictly against the applicants for beer or liquor licenses or permits. *Youngblood v. Rutherford County Beer Bd.*, 707

S.W.2d 507, 509 (Tenn. 1986). Tennessee follows the rule that distances shall be measured in a straight line, rather than some other manner such as usually traveled routes or street lines. *Jones v. Sullivan County Beer Bd.*, 292 S.W.2d 185, 187 (Tenn. 1956); *City of Murfreesboro v. Davis,* 569 S.W.2d 850, 807 (Tenn. 1978). Measuring from property line to property line is permissible, so long as the straight line method is used. *Exxon Corp. V. Metropolitan Gov't. Of Nashville and Davidson County,* 72 S.W.3d 638, 641 (Tenn. 2002). The case of *Erwin v. Richardson*, 399 S.W.2d 318 (Tenn. 1966) is distinguishable from our ruling. *Erwin* held that "such places of public gatherings" must be measured from building to building because the "place of sale" where petitioner's restaurant business is conducted clearly must be in the building itself and not the point where the driveway intersected the main road. The reviewing court found this to be in conflict with and beyond the provisions permitted by the statute. However, in *Erwin* the ordinance language itself specifically said "places" of sales or public gatherings and there was no specific language to designate the method of measurement. The court focused upon the meaning of "place". More importantly, the Court was considering the statute pertaining to counties. Accordingly, we hold the measurement utilized to issue the license was in violation of the ordinance as found by the Trial Judge. *See Watkins v. Naifeh,* 635 S.W.2d 104 (Tenn. 1982). Further, we hold the ordinance enacted by Lenoir City for regulating the sale of beer is reasonable.

As to the remaining issue of discriminatory enforcement, the evidence in this case is that the National Guard Armory is not freely open to the public to use at any time. Any public use is subject solely to the Guard's approval and it retained the right to refuse to rent for an event. Moreover, the evidence established that any public use was "isolated and occasional" and varied from twice a month to none in some years. We affirm the Trial Court's finding that the National Guard Armory was not a place of public gathering within the meaning of the statute. Accordingly, there is no basis for a finding of discriminatory enforcement.

For the foregoing reasons, we affirm the Judgment of the Trial Court, and remand with the cost assessed to the appellants.

_____
HERSCHEL PICKENS FRANKS, J.