**EXXONMOBIL OIL CORP.**

v.

**METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON
COUNTY, et al.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 12, 2005 Session.

June 28, 2005.

Permission to Appeal Denied by
Supreme Court Dec. 12, 2005.

Scott K. Haynes, Austin L. McMullen,
Nashville, Tennessee, for the appellant,
Exxonmobil Oil Corporation.

Francis H. Young, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County and Metropolitan Beer Permit Board of the Metropolitan Government of Nashville and Davidson County.

## OPINION

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and WILLIAM B. CAIN, J., joined.

Exxonmobil appeals the denial of a beer permit application by the Beer Permit Board of the Metropolitan Government of Nashville and Davidson County alleging the proximity prohibition in the local code is contravened by Tenn.Code Ann. § 57–5–109. We agree and reverse the trial court's denial of Exxonmobil's petition for writ of certiorari.

This appeal involves a second application by Exxonmobil Oil Corp. ("Exxon") for a beer permit at its Charlotte Avenue location in Nashville. Exxon's first application was denied by the Beer Permit Board of the Metropolitan Government of Nashville and Davidson County ("Beer Board"). The Beer Board's denial of Exxon's first application was appealed and ultimately upheld by the Tennessee Supreme Court in *Exxon Corp. v. Metropolitan Government of Nashville & Davidson County,* 72 S.W.3d 638 (Tenn.2002) (*"Exxon I "*), based upon the Court's interpretation of Tenn.Code Ann. § 57–5–109. Subsequent to the Supreme Court's decision in *Exxon I,* the legislature amended Tenn.Code Ann. § 57–5–109. Thereafter, Exxon made a second application to the Beer Board for a beer permit at the Charlotte Avenue location, relying on the amended statute. The second application was likewise denied by the Beer Board. Exxon sought judicial review of the Beer Board's denial of the second application to the Davidson County

Circuit Court, and that court upheld the Beer Board's decision. Exxon then filed an appeal to this court.

In order to address this appeal, a recounting of the history of Exxon's applications and the intervening changes in legislation is necessary.

### FIRST PERMIT APPLICATION

The Metropolitan Government of Nashville and Davidson County Code of Laws ("Metro Code") § 7.08.090(A)(1) prohibits the sale of beer within one hundred (100) feet of a licensed daycare center, among other types of establishments.

In March of 1999, Exxon purchased a business on Charlotte Avenue in Nashville that sold beer under a valid beer permit granted prior to January 1, 1993. At the time Exxon purchased the business, the building where the beer was sold complied with the one hundred foot restriction of the Metro Code.

After purchasing the business, Exxon demolished the existing building and rebuilt a convenience store at a different site on the same property. In May of 1999, Exxon applied for a beer permit for its new business and indicated that the new business would comply with the Metro Code 100 foot requirement. Pursuant to its standard policy, the Beer Board granted Exxon a provisional temporary beer permit. After inspection of the new structure, however, the Beer Board denied Exxon a permanent beer permit on July 28, 1999, because the new structure was only 84 feet from the Bethlehem Daycare Center, a licensed daycare center.

The Beer Board's denial of Exxon's first application was ultimately upheld by the Tennessee Supreme Court in *Exxon I.* In that case, the issue was the interpretation and application of Tenn.Code Ann. § 57–5–109 which at that time provided as follows:

A city or county shall not suspend, revoke or deny a permit to a business engaged in selling, distributing or manufacturing beer on the basis of the proximity of the business to a school, residence, church, or other place of public gathering if a valid permit had been issued to any business **on that same location** as of January 1, 1993. This section shall not apply if beer is not sold, distributed or manufactured at that location during any continuous six-month period after January 1, 1993. (emphasis added).

The Beer Board argued that "on that same location" meant on the same site or footprint as the building existed on January 1, 1993. *Exxon Corp.*, 72 S.W.3d at 640. On the other hand, Exxon argued that "on that same location" did not mean the specific site but anywhere within the boundary lines of the parcel of property. *Id.* The Court stated that it had granted permission to appeal "to determine whether the Court of Appeals erred in defining the phrase 'on that same location' as it is used in Tenn.Code Ann. § 57–5–109 to mean anywhere within the boundary lines of the property." *Id.* at 639.

In doing so, the Court found it appropriate to afford deference to the Beer Board's interpretation. *Id.* at 641. It found the Beer Board's interpretation consistent with Metro's regulations. The Metro Code specified that, in determining compliance with the one hundred foot restriction, distances were to be measured by using a straight line from the applicant's building to the closest building or playground of the designated entities. *Id.* Because the Code required building-to-building measurement, the Court found that defining location as the boundary line was not workable. Consequently, the Court held:

In light of the power of the Metropolitan Government of Nashville and Davidson County to "fix zones" of beer sales, and the manifest intent to apply the straight-line method of measurement between buildings, we hold that, to obtain the benefit of the grandfather clause in § 57–5–109, the building in which the business is located must comply with the one hundred feet distance regulation, as did the prior building.

*Id.* at 642.

The Court further reasoned that Tenn. Code Ann. § 57–5–109 was a grandfather clause since by its terms it "exempts a class of persons or transactions because of circumstances existing before a new rule or regulation takes effect." *Id.* It was not disputed that the business Exxon purchased conformed to the requirements of Metro Code § 7.08.090(A)(1) as of January 1, 1993, the trigger date in Tenn.Code Ann. § 57–5–109. The use became nonconforming after that date when Exxon demolished the old building and selected a different site on the property, not because of a new Metro Code provision or regulation. In other words, Exxon changed the circumstances under which previous beer permits had been issued. *Id.* at 642–43. Local governments possess legislatively-granted authority to impose restrictions on locations selling beer. The Court found that common sense indicated the legislature did not intend that the grandfather protection of Tenn.Code Ann. § 57–5–109 apply to allow a business to avoid the proximity requirement by changing the circumstances under which the original permit was issued. *Id.* at 643.

For these reasons, the Court found Exxon was not entitled to the protection of Tenn.Code Ann. § 57–5–109 and upheld the Beer Board's denial of Exxon's application for a beer permit based upon the proximity restriction in the Metro Code.

## SUBSEQUENT LEGISLATION

Shortly after the *Exxon I* decision was released by the Supreme Court on March 19, 2002, the General Assembly passed Chapter 744 of the Public Acts of the State of Tennessee for 2002, amending Tenn. Code Ann. § 57–5–109 ("2002 Amendment"). The 2002 Amendment, adding subsections (b) and (c), became effective on May 8, 2002, so that Tenn.Code Ann. § 57–5–109 then provided as follows:

(a) A city or county shall not suspend, revoke or deny a permit to a business engaged in selling, distributing or manufacturing beer on the basis of the proximity of the business to a school, residence, church, or other place of public gathering if a valid permit had been issued to any business on that same location as of January 1, 1993. This section shall not apply if beer is not sold, distributed or manufactured at that location during any continuous six-month period after January 1, 1993.

(b) For the purposes of this section, "on that same location as of January 1, 1993" means within the boundaries of the parcel or tract of the real property on which the business was located as of January 1, 1993. The provisions of this section apply whether or not a business moves the building on the location and whether or not the business was a conforming or nonconforming use at the time of the move.

(c) If a business applies for a beer permit within the continuous six-month period referenced in this section, and if the city or county denies the business a permit and if the business appeals that denial, a new six-month continuous sale period shall begin to run on the date when the appeal of that denial is final.[1]

In essence, the General Assembly clarified its intent regarding the definition of "on that same location," defining the phrase differently from the Supreme Court. It also clarified the situation with regard to prior use to which Tenn.Code Ann. § 57–5–109 would apply. Both changes directly addressed *Exxon I.*

## SECOND PERMIT APPLICATION

As with the facts surrounding Exxon's first application, the facts surrounding Exxon's second application are not in dispute.

On July 11, 2002, Exxon submitted to the Beer Board a second application for a beer permit for the Charlotte Avenue location ("Second Application"). On October 23, 2002, the Beer Board denied Exxon's second application because the building at that location was less than 100 feet from the Bethlehem Daycare Center in violation of Metro Code § 7.08.090(A)(1).[2] This code section provides in pertinent part as follows:

No beer permit shall be issued to an applicant whose location is less than one

1. Tenn.Code Ann. § 57–5–109 was later amended for the second time by Chapter 598 of the Public Acts of the State of Tennessee for 2004, effective July 1, 2004, which removed all references in the act to January 1, 1993. This amendment was not in effect when action was taken by the Beer Board on Exxon's second application and has no effect on the merits of this case.

2. The transcript of the Beer Board hearing also makes reference to Metro Code § 7.08.040 which apparently allows the Beer

Board to regulate beer sales so as not to interfere with the public health, safety and morals. This section of the Code was not made an exhibit to the proceedings although the Beer Board apparently intended to rely on it as an alternate ground. On appeal, however, the Beer Board does not attempt to rely on this ground. The Agreed Stipulations presented to the Circuit Court regarding Exxon's petition listed the proximity restriction as the only ground relied upon by the Beer Board.

hundred feet from a church, a school or its playground, a park, a licensed day care center or nursery school or their playgrounds, or a dwelling for one or two families. .... This subsection shall not affect any location for which a beer permit was in effect within three hundred sixty-five days of May 26, 1992, the effective date of the ordinance codified in this subsection A and, further, shall not affect said location thereafter so long as a beer permit is held for that location without lapse of more than three hundred sixty-five days, even if there is a change of ownership of the location or the business thereon. Provided, however, the foregoing to the contrary notwithstanding, the distance requirements contained herein shall be applied to any location which has been granted a beer permit after January 1, 1992, that was not subject to a minimum distance requirement....

Metro Code § 7.08.090(A)(1).

Thereafter, on December 11, 2002, Exxon filed a Petition for a Writ of Certiorari asking the Circuit Court to review and overturn the decision of the Beer Board. On January 14, 2004, the trial court denied Exxon relief, and Exxon then filed this appeal.

## STANDARD OF REVIEW

The issues raised in this appeal involve the interpretation of a state statute. Construction of a statute is a question of law which appellate courts review *de novo.* *Gleaves v. Checker Cab Transit Corp., Inc.,* 15 S.W.3d 799, 802 (Tenn.2000).

■ The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc. v. Sundquist,* 33 S.W.3d 772, 777 (Tenn.2000); *Carson Creek Vacation Resorts, Inc. v. State, Department of Revenue,* 865 S.W.2d 1, 2 (Tenn.1993); *McGee v. Best,* 106 S.W.3d 48, 64 (Tenn.Ct.App.2002). To determine legislative intent, one must look to the natural and ordinary meaning of the language used in the statute itself. We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming,* 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen,* 937 S.W.2d 823, 828 (Tenn.1996); *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC,* 93 S.W.3d 861, 867 (Tenn.Ct.App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *National Gas Distributors, Inc. v. State,* 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.,* 49 S.W.3d 281, 286 (Tenn.2001), *citing State v. Turner,* 913 S.W.2d 158, 160 (Tenn. 1995).

Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins,* 522 S.W.2d 674, 676–77 (Tenn. 1975); *In re Estate of Dobbins,* 987 S.W.2d 30, 34 (Tenn.Ct.App.1998). Courts must presume that the General Assembly selected these words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metropolitan Gov't.,* 798 S.W.2d 254, 257 (Tenn.Ct. App. 1990), and that the use of these words conveys some intent and carries meaning and purpose. *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn. 1984); *Clark v. Crow,* 37 S.W.3d 919, 922 (Tenn. Ct.App.2000).

## ANALYSIS

The legislature has delegated to local governments the authority to regulate

beer sales. Tenn.Code Ann. § 57–5–101 *et seq.* However, Tenn.Code Ann. § 57–5–109 is a limitation placed by the legislature on this delegated power.

If Exxon meets the conditions set out in that statute, it is entitled to the protection of Tenn.Code Ann. § 57–5–109, and the Beer Board is prohibited from denying its application on the basis of the proximity restrictions in Metro Code § 7.08.090(A)(1).

■ The Beer Board was required to apply Tenn.Code Ann. § 57–5–109 as amended to Exxon's second application.[3] The application was made after the amendment became effective. Under the statute, the Beer Board could not deny a permit to sell beer on the basis of the 100–foot requirement:

(1) If a permit had been issued to a business at the same location as of January 1, 1993. It is undisputed that this is the situation here.

(2) As long as the building where the applicant proposes to sell beer is within the boundaries of the parcel of real property on which the previously-permitted business was located. It is also undisputed that this is the situation here.

(3) Even if the applicant had moved the building on the parcel from the site of the building where beer was sold when originally permitted. Again, the undisputed facts show this is what Exxon did.

(4) Unless there has been a six-month gap in beer sales at the location.

By the express terms of Tenn.Code Ann. § 57–5–109(c), a discontinuance of beer sales for more than six months due to a permit denial and resulting appeal does not remove the applicant from the protection of the statute. It was stipulated herein that Exxon has not sold beer at this site since February of 1999. Exxon filed its first application for a beer permit in May of 1999. The pendency of the proceeding during the first permit application stayed the running of the six month period. Subsection (c) provides that a new six month period begins when the appeal is final. The *Exxon I* decision was released on March 19, 2002 and Exxon filed its second application within six months, on July 11, 2002. Consequently, Exxon was not precluded from a permit due to its cessation of beer sales during the litigation over its permit applications.

■ The 2002 Amendment removed much of the precedential effect of the Supreme Court's decision in *Exxon I* because the legislature exercised its prerogative to clarify the law in reaction to a court interpretation or application. The legislation redefined "location"; made it irrelevant whether the business owner changed the circumstances by moving the location of the building; and made it clear that the statute applies whether or not the building was conforming at the time of the move. In other words, if there was a valid permit on the specified date, the business owner may move the building's site on the parcel and the new building site will not be subject to local proximity restrictions relating to schools, churches, daycare centers and the like. By the clear and unambiguous language of the statute, a local government cannot deny a permit because a re-sited

---

**3.** Metro attempts to argue that application of Tenn.Code Ann. § 57–5–109, as amended, to Exxon's second application is a retroactive application. Applying the 2002 Amendment to Exxon's second application is prospective, not retroactive. The law in effect at the time of the application governs. The legislature simply exercised its prerogative to change the law by the 2002 Amendment, and we must apply it to permit applications made after its enactment.

building does not meet the distance requirements of an ordinance.

■ The Beer Board has argued that the 2002 Amendment is unfair or is unsound public policy. Those arguments do not provide a basis for this court to ignore or decline to enforce the clear intent of the amendments. It is not the court's role to alter or amend a statute. *Gleaves,* 15 S.W.3d. at 803. "Moreover a court must not question the 'reasonableness of [a] statute or substitute [its] own policy judgments for those of the legislature.'" *Id.* at 802–03 *quoting BellSouth Telecomms., Inc. v. Greer,* 972 S.W.2d 663, 673 (Tenn. Ct.App.1997). Metro has raised no constitutional challenge to the 2002 Amendment, and this court is unable to discern a constitutional infirmity. Therefore, it is our responsibility to interpret the statute as clearly written.

Counsel for the Beer Board argues that since Tenn.Code Ann. § 57–5–109 has been characterized by the Supreme Court in *Exxon I* as a "grandfather clause," then by definition it can apply only if there is a pre-existing nonconforming use. While this analysis was applicable under *Exxon I* as the statute existed at that time, the legislature has clarified the circumstances to which the statute will apply. Specifically, "The provisions of this section apply whether or not a business moves the building on the location and whether or not the business was a conforming or nonconforming use at the time of the move." Tenn. Code Ann. § 57–5–109(b).

Because of this clarification, the parties' arguments about whether the statute remains a grandfather clause are not determinative. Whatever the attributes of what may commonly be called a grandfather clause, courts cannot adopt an interpretation of a statute that contradicts the specific, clear, unambiguous terms used by the legislature. Subsection (b) of the revised statute clearly removes any question of whether Exxon can avail itself of the statute's protection.

For the foregoing reasons, Exxon's second application falls within the protection of Tenn.Code Ann. § 57–5–109. Consequently, the Beer Board had no authority to deny, and was statutorily prohibited from denying, Exxon a beer permit under the undisputed facts surrounding its second application on the basis of proximity to "a school, residence, church, or other place of public gathering." Tenn.Code Ann. § 57–5–109(a). Tennessee courts have long held that "daycare centers are considered places of public gathering 'of a like sort to schools and churches.'" *Tennessee Sports Complex, Inc. v. Lenoir City Beer Board,* 106 S.W.3d 33, 35 (Tenn.Ct.App. 2003). The parties do not dispute that the daycare center is a place of public gathering within the meaning of Tenn.Code Ann. § 57–5–109.

Accordingly, we find that the Beer Board had no authority to deny Exxon's second application on the basis of Metro Code Section 7.08.090(A)(1) because to do so would contravene Tenn.Code Ann. § 57–9–105 and exceed the authority granted to it by the legislation. The judgment of the trial court is reversed, and costs of the appeal are assessed against the Metropolitan Government of Nashville and Davidson County.