# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 24, 2014 Session

## IN RE: THE ADOPTION OF MALE CHILD A. F. C. BY: C. M. C. AND D. F. C., AND J. L. B.

### Appeal from the Chancery Court for Rutherford County
### No. 12CV1059, 12CV1097     Robert E. Corlew, III, Chancellor

---

### No. M2013-00583-COA-R3-CV - Filed July 16, 2014

---

Parents of a child born of a surrogate mother with an anonymously donated egg and the father's sperm and Tennessee Department of Health appeal order entered in consolidated parentage and adoption proceedings which required the live birth certificate issued for the child to list the mother as "unknown." Having determined that the definition of "mother" for the purpose of completing the birth certificate is the same as that used in preparing the standard birth certificate promulgated by the National Center for Health Statistics, we reverse the trial court's decision and hold that the gestational carrier should be listed as the mother.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part and Affirmed in Part**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ANDY D. BENNETT, J., and LARRY BART STANLEY, SP. J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; Sara E. Sedgwick, Senior Counsel; Nashville, Tennessee, for the appellant, Tennessee Department of Health.

Julie J. Tate, Brentwood, Tennessee, for the appellees, John Doe and Jane Doe.

## OPINION

### I. FACTUAL & PROCEDURAL HISTORY

This case presents the question of who should be listed as mother on the birth certificate of a child born through surrogacy. A married couple, C.M.C. ("Intended Mother") and D.F.C. ("Father"), entered into a surrogacy agreement with J.L.B. and her husband, D.B., whereby J.L.B. would carry and give birth to a child on behalf of Intended Mother and

Father. Per their agreement, Intended Mother and Father obtained an egg from an anonymous, surrogate egg donor; the egg was fertilized *in vitro* with Father's sperm, and the fertilized egg was implanted in J.L.B.'s uterus. The process was successful, and a child, A.F.C. (the "Child"), was born.

One day before A.F.C.'s birth, Father and Intended Mother filed a Petition for Declaration of Parentage in Rutherford County Chancery Court ("Parentage Proceeding"), seeking a declaration that: (1) Father is the genetic and legal father of the Child; (2) J.L.B.'s husband is not the father; (3) J.L.B. is not the genetic or legal mother; (4) and J.L.B. "should not be identified as the Mother of the baby on the baby's birth certificate." The court entered an Order of Parentage on August 1 holding that Father was the legal father and Intended Mother was the "legal mother" of the Child; that "any hospital or other agency is authorized to rely upon this Order" to "generate, alter, or amend such documents" to reflect that the Intended Mother is the mother of the child; and that "[i]n the event that any policy, practice, or procedure . . . precludes [the] hospital or agency from identifying [Intended Mother] as the mother of the Child" then the mother should be listed as "unknown or unidentified."

In a separate action also filed in Rutherford County Chancery Court, Father, Intended Mother, and J.L.B. filed a Petition for Adoption by a Related Parent (the "Adoption Proceeding"); the court entered a final decree of adoption declaring Child to be the adopted child of Intended Mother.

The Tennessee Department of Health (the "Department") filed a motion to intervene in the Parentage Proceeding; the Department also sought to alter, amend, or set aside portions of the Order of Parentage. The Department asserted that J.L.B.'s name should be placed on the original birth certificate and that Intended Mother's name could only be placed on a new birth certificate after she had obtained an Order of Adoption through a stepparent adoption procedure. Father and Intended Mother responded, stating that they did not oppose the Department intervening in the matter but requesting that the Department's motion to set aside the Order of Parentage be denied.

The Department also filed a motion to intervene in the Adoption Proceeding and sought to alter, amend, or set aside the Final Decree of Adoption. The Department also moved to consolidate the Adoption Proceeding with the Parentage Proceeding.

In an order entered January 28, 2013, the court consolidated the adoption and parentage proceedings, permitted the Department to intervene in both cases, and ordered the Department to "issue an original birth certificate . . . showing his mother as 'unknown' in the place for listing the mother"; the court also ordered the Department to issue a new certificate of birth by adoption which would identify Intended Mother as Child's mother. Intended Parents and the Department both appeal from the trial court's holding.

2

## II. ISSUES ON APPEAL

We begin with a clarification of the issues that are appropriately before this Court. The Department raises the following issue:

> Whether the original birth certificate for a child born as a result of a gestational surrogacy agreement using the husband's sperm and an anonymous donor egg should list the gestational surrogate as the mother, or whether it should instead list the mother as "unknown."

Intended Parents articulate the following issue:

> Who is the legal mother of a child conceived with an anonymously donated egg and carried by a gestational carrier for the benefit of the child's genetic father and his wife who arranged for the child and conceived him with the intention to be his parents?

As we consider the issues presented, we are mindful of the instruction set forth in *In re C.K.G.* to decide cases such as this on "particularly narrow grounds" given their "inherently policy-laden and . . . administratively and fiscally momentous" nature. *In re C.K.G.*, 173 S.W.3d 714, 726–27 (Tenn. 2005). For the reasons set forth below, we are of the opinion that the issue presented by Intended Parents is not proper for resolution.

In the Order of Parentage the court held, *inter alia*, that Intended Mother met one of three "indicia of motherhood" and on that basis was the "legal mother" of the Child.[1] The

---

[1] In so ruling, the court applied factors derived from *In re C.K.G.*, which it called "indicia of motherhood" and held:

3.  That the indicia of motherhood, as set forth in *In re C.K.G.*, . . . include: genetic parenthood of the child or child[ren], gestation of the child or child[ren], and the intention of to be the mother of the child or child[ren];
4.  That [J.L.B.] meets only one of the indicia of motherhood – gestation – but that she meets the indicia only because she has gestated this child for another couple, with no intention to be the mother of the child;
5.  That no other woman (besides [Intended Mother]) seeks to have maternal rights to the child to whom [J.L.B.] will soon give birth nor does any other woman seek to be identified as the baby's mother on the birth certificate;
6.  That, despite giving birth to this child, [J.L.B.] is not the mother of this child and does not have the rights, responsibilities, or obligations of a parent-child relationship with the child and has no obligation to be named as the mother of this child on the child's birth certificate;

(continued)

3

order stated that a hospital or other agency could rely on the order to generate documents indicating that fact, and that if Intended Mother could not be listed as the mother, then the mother should be listed as "unknown." The Department of Health thereafter intervened in the proceeding and moved the court as follows:

> [T]o alter or amend or to set aside that portion of the Order that finds that the non-genetic, non-gestational intended mother [C.M.C.] is the legal mother and authorizes the Department to register the birth either by placing the intended mother's name on the original birth certificate, along with the biological father's name, as the child's legal parents or, in the alternative, by identifying the mother as "unknown" or "unidentified" rather than by identifying the birth mother, [J.L.B.], as the child's legal mother on the original birth certificate.

The court granted the motion in part, modifying the portions of the order which addressed the issuance of a birth certificate for the child; the court did not modify the portion of the order holding Intended Mother to be the "legal mother" of the child. The order stated in pertinent part:

> Pursuant to the Court's findings of fact and conclusions of law, the Tennessee Department of Health shall not list the name of the surrogate/gestational carrier, J.L.B. (who has no biological relationship to the child) as the mother on the original birth certificate, nor shall the Department list the name of the intended/adoptive mother, C.M.C., in the place for listing the mother on the original birth certificate. Instead, the Tennessee Department of Health shall issue an original birth certificate . . . showing his mother as "unknown" in the place for listing the mother.

The Department appeals the ruling that the birth certificate should show the mother as "unknown"; the Department does not challenge the court's ruling that Intended Mother is the "legal mother."

Intended Parents contend that the trial court erred in not ordering that Intended Mother be listed on the birth certificate as the mother. They argue that, in the absence of a statute

---

(continued)

7. That [Intended Mother] does meet one of the indicia of maternity (intention to be the child's parent) with no reservation or factual situation which would mitigate against a finding that [Intended Mother] is not the child's mother;

8. That, having met this indicia of motherhood, [Intended Mother], is the legal mother of the child to whom [J.L.B.] will soon give birth.

defining who is the "legal mother" of a child "conceived with a donated egg and carried by a gestational carrier for the benefit of a married couple," this court should craft a principle of law by which Intended Mother would be the "legal mother" for all purposes, including the right to be listed on the birth certificate. In their brief, Intended Parents express the concern relating to "potential problems which may arise" if the issue they present is not resolved. We are of the opinion, however, that the lack of challenge to the declaration in the Order of Parentage that Intended Mother is the "legal mother," together with our disposition of the Department's appeal, effectively addresses the concerns raised by Intended Parents on the record presented.

A birth certificate provides "prima facie evidence of the facts stated" therein, *see* Tenn. Code Ann. § 68-3-202; however, the names listed thereon are not a finding of parentage nor do they create or terminate parental rights.[2] The determination of who should be listed as the mother on the birth certificate is independent of the determination of who is the "legal mother." In this case, the ruling in the Order of Parentage that Intended Mother is the "legal mother" has not been challenged, only its ruling that the birth certificate be issued showing the mother as "unknown." Consequently, to the extent Intended Parents sought a declaration that Intended Mother is the "legal mother", they have effectively received the relief that they sought in both proceedings.

Such an important and consequential issue as the one raised by Intended Parents should be left for determination in a case that presents an actual, ongoing controversy, or, as noted in *In re C.K.G.*, should be resolved by the legislature. *In re C.K.G.*, 173 S.W.3d at 730. The legal and policy concerns presented are well beyond the narrow grounds upon which precedent dictates we decide this case. *Id.* at 726-727.

Therefore, the question that is appropriately before this Court is who should be listed as the child's mother on the certificate of live birth—Intended Mother, J.L.B., or the unknown egg donor?

## III. ANALYSIS

In resolving this appeal, we employ the principles of statutory construction, the primary rule of which is "to ascertain and give effect to the intention and purpose of the

---

[2] For example, where a child is born to an unmarried couple, the biological father's execution of a voluntary acknowledgment of paternity pursuant to Tenn. Code Ann. § 24-7-113 constitutes a "legal finding of paternity." Once the sworn acknowledgment is signed by the mother and the biological father of the child and the form is submitted to the office of vital records, then the biological father's name may be "entered in the spaces provided on the birth certificate." Tenn. Code Ann. § 68-3-305(b)(2)(A). Thus, it is the voluntary acknowledgment of paternity that is legally operable, not the child's birth certificate.

5

legislature." *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000); *Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *Exxonmobil Oil Corp. v. Metro. Gov't. of Nashville and Davidson County*, 246 S.W.3d 31, 35 (Tenn. Ct. App. 2005); *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). To determine legislative intent or purpose, we look to the natural and ordinary meaning of the language used in the statute itself and examine each provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *Exxonmobil*, 246 S.W.3d at 35; *T.R. Mills Contractors, Inc. v. WRH Enterprises, LLC*, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). Construction of a statute is also a question of law which appellate courts review *de novo*, without a presumption of correctness of the trial court's findings. *Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002); *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Exxonmobil*, 246 S.W.3d at 35.

The Vital Records Act of 1977 (the "Act") is codified as Chapter 3 of Title 68. Pursuant to Tenn. Code Ann. § 68-3-103, the Tennessee Department of Health is charged with the responsibility of, *inter alia*, developing regulations "necessary for the creation and efficient performance of an adequate system of vital records, and give instructions and prescribe forms for collecting, transcribing, compiling and preserving vital records." Tenn. Code Ann. § 68-3-103(2). The information collected on the records is to be "such as will aid the public health of the state." Tenn. Code Ann. § 68-3-201.

The Act requires that a certificate of birth be filed with the office of vital records for every live birth in Tennessee. Tenn. Code Ann. § 68-3-301. The Act does not define "mother" for use in completing the birth certificate and does not prescribe the information that is to be included on a certificate of live birth; rather the Act states:

> In order to promote and maintain nationwide uniformity in the system of vital records, the forms of certificates, reports and other returns required by this chapter, or by regulations adopted under this chapter, shall include, as a minimum, the items recommended by the federal agency responsible for national vital statistics.

Tenn. Code Ann. § 68-3-202(a). In this regard, 42 U.S.C.A. § 242k establishes the National Center for Health Statistics (the "Center") and directs the Secretary of Health and Human Services to act through the Center "for the purpose of improving the effectiveness, efficiency, and quality of health services in the United States." 42 U.S.C.A. § 242k (a). "To assist in carrying out this section," the Secretary must "cooperate and consult with [...] State and local health departments and agencies." 42 U.S.C.A. § 242k(f). In order to "secure uniformity in the registration and collection of mortality, morbidity, and other health data,"

6

it is the Secretary's responsibility to "prepare and distribute suitable and necessary forms for the collection and compilation of such data." 42 U.S.C.A. § 242k(g).

The Center has promulgated a U.S. Standard Certificate of Live Birth (the "standard certificate"). *See* Nichols Cyclopedia of Legal Forms Annotated § 172:13. In addition to recording the names of the parents and child, the standard certificate includes detailed medical information regarding the mother's pregnancy, including the date of her first and last prenatal care visits and the number of total visits; height; prepregnancy weight and weight at delivery; whether she received food assistance; number of previous births, pregnancies, and the outcomes of those events; whether she smoked cigarettes before and/or during the pregnancy; and the date of her last menses. The form includes detailed information about the birth itself, including risk factors of the pregnancy; obstetric procedures; infections present and/or treated during the pregnancy; onset of labor; characteristics of labor and delivery; method of delivery; and maternal morbidity. Finally, it includes information regarding the newborn. The guide to completing the birth certificate advises that "[a]ll information on the mother should be for the woman who gave birth to, or delivered the infant."[3]

As we consider the intent of and purpose served by the Act, we have determined that the "mother" to be entered on the certificate of live birth required by Tenn. Code Ann. § 68-3-301 is the same as that used in preparing the standard certificate, i.e., the woman who delivers the child. The purpose of the Act, in the broadest sense, is to aid the public health of the state; to that end, the Act aims "to promote and maintain nationwide uniformity in the system of vital records" by mandating that birth certificates reflect the recommendations of the Center. Similarly, the goal of 42 U.S.C.A. § 242k is to improve health services in the United States. Using the same definition of mother enables the state and federal governments to collaborate in pursuit of their respective goals.

Construing the Act in this fashion is also consistent with the definition of "live birth" at Tenn. Code Ann. § 68-3-102:

(10) "Live birth" means *the complete expulsion or extraction from its mother of a product of human conception*, irrespective of the duration of the pregnancy, that, after expulsion or extraction, breathes or shows any other evidence of life, such as beating of the heart, pulsation of the umbilical cord, or definite movement of voluntary muscles, whether or not the umbilical cord has been cut or the placenta is attached. Heartbeats shall be distinguished from transient

---

[3] The Center also prepared a "Guide to Completing The Facility Worksheets for the Certificate of Live Birth and Report of Fetal Death," which provides guidance to facilities in completing "the facility worksheets for the revised Certificate of Live Birth." *See* www.cdc.gov/nchs/data/dvs/guidetocompletefacilitywks.pdf.

cardiac contractions, and respirations shall be distinguished from fleeting respiratory efforts or gasps;

Tenn. Code Ann. § 68-3-102 (emphasis added).  Thus, "mother" as used in the Act is the woman who produced the "live birth."

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Chancery Court prohibiting the Department from listing J.L.B. as mother on the original birth certificate and to list the mother as "unknown" is reversed and the Department is directed to issue an original birth certificate listing J.L.B. as mother; in all other respects the judgment is affirmed.


_____
RICHARD H. DINKINS, JUDGE