IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 6, 2008 Session

## PHYLLIS T. CRAIGHEAD v. BLUECROSS BLUESHIELD OF TENNESSEE, INC., ET AL.

Appeal from the Circuit Court for Wilson County
No. 12,289    Clara W. Byrd, Judge

No. M2007-01697-COA-R10-CV - Filed July 31, 2008

We reverse the trial court's finding that the immunity granted in the second sentence of Tenn. Code Ann. § 56-53-110 applied only where there was proof that actual malice was absent. With regard to the statute of limitations governing claims related to diminution in value to a business, where the gravamen of the complaint is for breach of contract, the six-year period of Tenn. Code Ann. § 28-3-109 governs, but where the gravamen of the complaint is for injury to property, the three-year period of Tenn. Code Ann. § 28-3-105 governs.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Circuit Court
Reversed and Remanded**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Gary C. Shockley, Samuel T. Bowman, Nashville, Tennessee, for the appellants, BlueCross BlueShield of Tennessee, Inc., and Volunteer State Health Plan, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter, Dennis J. Garvey, Deputy Attorney General, Jeremy E. Pyper, Assistant Attorney General, Nashville, Tennessee, as *Amicus Curiae* in support of appellants, BlueCross BlueShield of Tennessee, Inc., and Volunteer State Health Plan, Inc.

Robert L. Huskey, Jason L. Huskey, Manchester, Tennessee, for the appellee, Phyllis T. Craighead.

### OPINION

This court granted defendant's Tenn. R. App. P. 10 application for an extraordinary appeal to review the trial court's denial of defendant's request for partial summary judgment of plaintiff's claim for malicious prosecution and to review which statute of limitations applies to a claim pertaining to diminution in value to a business.

In July of 2002, Phyllis Craighead, individually and as an assignee of Kids and Nurses, Inc.[1] ("K&N"), sued BlueCross BlueShield of Tennessee ("BCBS")[2] for breach of contract, malicious prosecution, and outrageous conduct.

The following facts are not disputed. K&N, as the name implies, provided nursing services for children with special health problems. In May of 1993, K&N entered into a contract with BCBS to provide these services to BCBS enrollees. In February of 1996, the parties entered into an amendment of their contract such that K&N provided the services as a subcontract to BCBS under the TennCare program. The contract between BCBS and K&N gave either party the right to terminate the contract without cause upon 90 days written notice. On September 11, 1997, BCBS gave K&N notice of its intent to terminate the contract which was effective 90 days thereafter.

All parties acknowledge that the contract between BCBS and K&N was subject to the TennCare Contractor Risk Agreement between BCBS and the TennCare Bureau. The Contractor Risk Agreement between BCBS and the State of Tennessee for TennCare services provides in § 1.5 as follows:

> All managed care organizations shall immediately report to the TBI MFCU [Tennessee Bureau of Investigation Medicaid Fraud Control Unit] any suspicion or knowledge of fraud and/or abuse, including but not limited to the false or fraudulent filings of claims and/or the acceptance or failure to return monies allowed or paid on claims known to be false or fraudulent. The reporting entity shall not attempt to investigate or resolve the reported suspicion, knowledge or action without informing the TBI MFCU and must cooperate fully in any investigation by the TBI MFCU or subsequent legal action that may result from such an investigation. TennCare managed care organizations and health care providers shall, upon request, make available to the TBI MFCU any and all administrative, financial and medical records relating to the delivery of items or services for which TennCare monies are expended. In addition, the TBI MFCU must be allowed access to the place of business and to all records of any TennCare managed care organization or health care provider during normal business hours, except under special circumstances when after hour admission shall be allowed. Special circumstances shall be determined by the TBI MFCU.

---

[1] It is not disputed for purposes of this appeal that Kids and Nurses, Inc. was sold to Pediatric Services of America on November 21, 1997, including Ms. Craighead's interest in K&N. It appears that Ms. Craighead was assigned by K&N its interest in the lawsuit against BCBS, although the terms and extent of this assignment are neither challenged nor clear. For purposes of this opinion, it is assumed that K&N assigned to Ms. Craighead any breach of contract claims K&N may have had against BCBS.

[2] Included as defendant were the affiliated companies of BCBS, including Volunteer State Health Plan, Inc. which is a managed care organization that contracted with the State of Tennessee, TennCare Bureau, in the Contractor Risk Agreement to provide services for TennCare, the state's Medicaid plan. The defendant is collectively referred to as "BCBS."

In Ms. Craighead's Response to the defendant's Rule 56.03 Statement of Undisputed Facts, the parties agreed as follows:

2.      BCBS was under a contractual duty to report suspected fraud to the TBI.

**Source**:      Contractor Risk Agreement § 1-5.

**Response**:    Admit, but this requirement to admit does not give them the license to misrepresent the facts to TBI for BlueCross's financial gain.

3.      BCBS was under a contractual duty to cooperate with the TBI in its investigation of suspected fraud.

**Source**:      Deposition of Patricia Schermerhorn, page 107, lines 1-19;

**Response**:    Admit

In her complaint, Ms. Craighead alleges that BCBS wrongfully reported accepted billing practices as Medicaid fraud to the Tennessee Bureau of Investigation ("TBI") which prompted a criminal investigation and that during the course of the criminal investigation BCBS provided "slanted" and "incomplete" information to authorities. Ms. Craighead also alleges that BCBS "slow walked and intentionally evaded their obligation under the contract to timely process the payments" in violation of their contract which resulted in a cash flow problem for K&N. As a result of these actions, Ms. Craighead alleges that the value of K&N was diminished when it was later sold. Ms. Craighead alleges that she was tried on thirty-six (36) counts of TennCare insurance fraud in federal court and was ultimately acquitted. As a result of these alleged actions, Ms. Craighead alleged BCBS is liable for outrageous conduct, malicious prosecution and breach of contract.

The defendant filed a motion for partial summary judgment seeking dismissal of the malicious prosecution claim and the outrageous conduct claim. The trial court dismissed the outrageous conduct claim, and that dismissal is not appealed.[3] The rulings which are subject to this appeal are the trial court's denial of summary judgment on the malicious prosecution claim and its refusal to find that recovery for diminution in value to K&N is barred by the three-year limitations period of Tenn. Code Ann. § 28-3-105.

The trial court gave two reasons for its refusal to dismiss the malicious prosecution claim. First, the trial court found that there were issues of material fact surrounding elements of the malicious prosecution claim. The trial court declined to grant BCBS dismissal of the malicious

---

[3]Earlier the trial court denied BCBS's motion for summary judgment on the breach of contract claim which is likewise not subject to this appeal. Consequently, the claim that BCBS breached its contract with K&N by its delays and failure to pay for services rendered by K&N remains.

prosecution claim finding that there was a genuine issue of material fact as to whether BCBS provided false information or omitted information when it reported suspected fraud to the TBI.  The court also found that reasonable minds could differ as to whether there was probable cause to suspect fraud.  Second, the trial court further found that BCBS did not enjoy the immunity offered by Tenn. Code Ann. § 56-53-110 since it "does not apply in case of actual malice, and that there is a genuine issue as to the existence of malice under the facts and before the court."

BCBS also argues on appeal that the trial court erred when it held that diminution in value to K&N is not an injury to property governed by the three-year limitations period of Tenn. Code Ann. § 28-3-105.  The court found that plaintiff's "attempt to recover for damages in value to Kids & Nurse, Inc. is an element of the damages of the breach of contract [claim] and not a separate claim for property damages."

We will first address whether the trial court erred when it denied defendant's request for summary judgment of plaintiff's malicious prosecution claim.  Since the question whether BCBS is immune under Tenn. Code Ann. § 56-53-110 would pretermit any other issues raised on appeal about the malicious prosecution matter, we will start our inquiry with the immunity issue.

### I.  IMMUNITY UNDER TENN. CODE ANN. § 56-53-110

In 2001, the General Assembly enacted Chapter 53 of Title 56 of Tennessee Code Annotated entitled "Insurance Fraud" to combat, as the title suggests, insurance fraud.  By virtue of this act, it became a criminal violation to participate in a "fraudulent insurance act" as defined by Tenn. Code Ann. § 56-53-102.  Included with the definition of a "fraudulent insurance act," among other things, is the following:

> (a) Any person who, knowingly and with intent to defraud, and for the purpose of depriving another of property or for pecuniary gain, commits, participates in or aids, abets, or conspires to commit or solicits another person to commit, or intentionally permits its employees or its agents to commit any of the following acts, has committed a fraudulent insurance act:
>
> (1) Presents, causes to be presented, or prepares with knowledge or belief that it will be presented, by or on behalf of an insured, claimant or applicant to an insurer, insurance professional or premium finance company in connection with an insurance transaction or premium finance transaction, any information which contains false representations as to any material fact, or which withholds or conceals a material fact concerning any of the following:
>
> . . .
>
> (B) A claim for payment or benefit pursuant to any insurance policy;
> (C) Payments made in accordance with the terms of any insurance policy;

-4-

. . .

Civil liability was created for anyone who commits an "unlawful insurance act" as defined by Tenn. Code Ann. § 56-53-103. If a party is convicted of a fraudulent insurance act, courts are authorized to order restitution of damages under Tenn. Code Ann. § 56-53-105. This act also granted civil immunity for those persons cooperating under the Act. Tenn. Code Ann. § 56-53-110 provides as follows:

> In the absence of actual malice, no person furnishing, disclosing or requesting information pursuant to § 56-53-109 shall be subject to civil liability for libel, slander, or any other cause of action arising from the furnishing, disclosing or requesting of such information. **No person providing information pursuant to § 56-53-109(a) shall be subject to civil liability for any cause of action arising from the person's provision of requested information.** Any person against whom any action is brought who is found to be immune from liability under this section, shall be entitled to recover reasonable attorneys' fees and costs from the person or party who brought the action. This section does not abrogate or modify in any way any common law or statutory privilege or immunity heretofore enjoyed by any person. (emphasis added).

The code section referenced above, Tenn. Code Ann. § 56-53-109, entitled "Cooperation," provides as follows:

> (a) When any law enforcement official or authority, any insurance department, state division of insurance fraud, or state or federal regulatory or licensing authority requests information from an insurer or insurance professional for the purpose of detecting, prosecuting or preventing insurance fraud, the insurer or insurance professional shall take all reasonable actions to provide the information requested, subject to any legal privilege protecting such information.

> (b) Any insurer or insurance professional who has reasonable belief that an act violating § 56-53-102 or § 56-53-103 will be, is being, or has been committed shall furnish and disclose any information in such insurance professional's possession concerning such act to the appropriate law enforcement official or authority, insurance department, state division of insurance fraud, or state or federal regulatory or licensing authority, subject to any legal privilege protecting such information. In no case shall the information be required by subpoena or otherwise to be given to the person alleged to have committed a violation, unless in possession of an insurer and that insurer used the information to deny a claim of the person, in whole or in part.

> (c) All documents or other information submitted to or generated by a law enforcement, regulatory, licensing or other governmental agency pursuant to subsection (a) or (b) shall not be subject to disclosure pursuant to the Tennessee

Public Records Act, codified in title 10, chapter 7, and shall be confidential unless disclosed by such law enforcement, regulatory, licensing or other governmental agency at such agency's sole discretion.

(d) Any person who has a reasonable belief that an act violating this chapter will be, is being, or has been committed, or any person who collects, reviews or analyzes information concerning insurance fraud may furnish and disclose any information in such person's possession concerning such act to an authorized representative of an insurer who requests the information for the purpose of detecting, prosecuting or preventing insurance fraud.

(e) Failure to cooperate with a request for information from an appropriate local, state or federal governmental authority shall bar a person's eligibility for restitution from any proceeds resulting from such governmental investigation and prosecution. This subsection shall not be construed as limiting the ability of any governmental authority from imposing lawful civil discipline upon a person or entity that fails to cooperate with a request for information as delineated in this subsection.

Whether BCBS is shielded by this statutory immunity is a matter of statutory construction. Construction of a statute is a question of law which appellate courts review *de novo*, without a presumption of correctness of the trial court's findings. *Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002); *Hill v. City of Germantown*, 31 S.W.3d 234, 237 (Tenn. 2000); *Gleaves v. Checker Cab Transit Corp., Inc.*, 15 S.W.3d 799, 802 (Tenn. 2000); *Exxonmobil Oil Corp. v. Metro. Gov't. of Nashville and Davidson County*, 246 S.W.3d 31, 35 (Tenn. Ct. App. 2005).

The primary rule of statutory construction is "to ascertain and give effect to the intention and purpose of the legislature." *LensCrafters, Inc. v. Sundquist*, 33 S.W.3d 772, 777 (Tenn. 2000); *Carson Creek Vacation Resorts, Inc. v. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993); *Exxonmobil*, 246 S.W.3d at 35; *McGee v. Best*, 106 S.W.3d 48, 64 (Tenn. Ct. App. 2002). To determine legislative intent, one must look to the natural and ordinary meaning of the language used in the statute itself. We must examine any provision within the context of the entire statute and in light of its over-arching purpose and the goals it serves. *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *Cohen v. Cohen*, 937 S.W.2d 823, 828 (Tenn. 1996); *Exxonmobil*, 246 S.W.3d at 35; *T.R. Mills Contractors, Inc. v. WRH Enterprises,* LLC, 93 S.W.3d 861, 867 (Tenn. Ct. App. 2002). The statute should be read "without any forced or subtle construction which would extend or limit its meaning." *Nat'l Gas Distributors, Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). As our Supreme Court has said, "[w]e must seek a reasonable construction in light of the purposes, objectives, and spirit of the statute based on good sound reasoning." *Scott v. Ashland Healthcare Center, Inc.*, 49 S.W.3d 281, 286 (Tenn. 2001) (citing *State v. Turner*, 913 S.W.2d 158, 160 (Tenn. 1995)).

Courts are also instructed to "give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent." *Tidwell v. Collins*, 522 S.W.2d 674, 676-77 (Tenn. 1975); *In re Estate of Dobbins*, 987 S.W.2d 30, 34 (Tenn. Ct. App. 1998). Courts must presume that the General Assembly selected these words deliberately, *Tenn. Manufactured Housing Ass'n. v. Metro. Gov't.*, 798 S.W.2d 254, 257 (Tenn. Ct. App. 1990), and that the use of these words conveys some intent and carries meaning and purpose. *Tennessee Growers, Inc. v. King,* 682 S.W.2d 203, 205 (Tenn. 1984); *Clark v. Crow,* 37 S.W.3d 919, 922 (Tenn. Ct. App. 2000).

When construing statutes that are part of a statutory scheme, we are also directed to look to the context of the particular provision. Our Supreme Court has made the following observation:

> When statutory provisions are, as in this case, enacted as part of a larger Act, 'we examine the entire Act with a view to arrive at the true intention of each section and the effect to be given, if possible, to the entire Act and every section thereof. Where different sections are apparently in conflict we must harmonize them, if practicable, and lean in favor of a construction which will render every word operative.'

*Hill*, 31 S.W.3d at 238 (quoting *Bible & Godwin Constr. Co. v. Faener Corp.*, 504 S.W.2d 370, 371 (Tenn. 1974)).

The trial court found that in order for the immunity of Tenn. Code Ann. § 56-53-110 to apply, there must be an absence of malice. This is clearly a prerequisite in order to claim the immunity granted in the first sentence of the statute. Consequently, absent actual malice, no person who furnishes, discloses, or requests information pursuant to the *first* sentence of Tenn. Code Ann. § 56-53-109 may be subject to civil liability.

We do not believe, however, the immunity available in the **second** sentence requires an absence of actual malice for several reasons. First, the plain language of the second sentence, which applies only if a person is providing information **upon request**, contains no such requirement of actual malice. Second, to imply such a requirement would make the second sentence redundant and useless. We must give meaning to the second sentence and recognize the legislature's intent to create a different kind of immunity in a specific situation. Also, the second sentence refers to subsection (a) of Tenn. Code Ann. § 56-53-109 which only applies to information requested from an **insurer.** The reference to Tenn. Code Ann. § 56-53-109 in the first sentence is not limited to subsection (a), but also applies to one furnishing information under Tenn. Code Ann. § 56-53-109(b), (c), (d) and (e). Therefore, the meaning of Tenn. Code Ann. § 56-53-110 becomes clear. The determinative distinction between the two sentences is whether one is an insurer responding[4] to a request for information. If so, then one is immune from civil liability. If not, then one is immune from civil liability only if there is an absence of actual malice.

---

[4] Presumably, if one is acting on behalf of an insurer such as an employee or agent the immunity would likewise apply.

Omitting the absence of actual malice requirement while granting immunity to insurers who respond to requested information is also an expression of public policy within the legislature's domain. If a person intentionally provides investigating authorities with false information and evidence then the authority involved may take whatever lawful recourse is available. Consequently, there exists incentive to prevent such behavior. The legislature has clearly decided that exposing and eliminating insurance fraud is important and that to be successful one must secure the cooperation of insurers. To that end, immunity is granted without reservation to insurers who provide information upon request to proper authorities, including the TBI. Whether one cooperates with the purest of motives or the darkest of heart is irrelevant under the second sentence of Tenn. Code Ann. § 56-53-110. The legislature is responsible for balancing the interests involved and has clearly decided that securing the cooperation of insurers in responding to requested information to root out fraud overrides the interest of a person to recover damages in a civil suit for tortious conduct.

In addition to the ground relied upon by the trial court requiring an absence of actual malice, Ms. Craighead offers an additional reason why BCBS may not claim the immunity granted in the second sentence of Tenn. Code Ann. § 56-53-110. According to Ms. Craighead, the allegedly tortious behavior of BCBS occurred in 1996, 1997 and 1998, years before the immunity statute was enacted in 2001. Ms. Craighead was indicted on July 10, 2001 and acquitted in April of 2002. According to Ms. Craighead, applying Tenn. Code Ann. § 56-53-110 to these facts would be an inappropriate retroactive application.

In order to be successful in a claim for malicious prosecution, the plaintiff must show: (a) that a prior lawsuit or judicial proceeding was brought against the plaintiff without probable cause, (b) that the prior lawsuit or judicial proceeding was brought against the plaintiff with malice, and (c) that the prior lawsuit or judicial proceedings terminated in the plaintiff's favor. *Parrish v. Marquis*, 172 S.W.3d 526, 530 (Tenn. 2005) (citing *Christian v. Lapidus*, 833 S.W.2d 71, 73 (Tenn. 1992)); *Roberts v. Federal Express Corp.*, 842 S.W.2d 246, 247-48 (Tenn. 1992).

Since the suit was not terminated in Ms. Craighead's favor until April of 2002, she did not have a cause of action for malicious prosecution until that time. At the time her cause of action arose in April of 2002, the statutory immunity had been in effect since July of 2001. Therefore, even if Tenn. Code Ann. § 56-53-110 is given a prospective application only, it is applicable to Ms. Craighead's action.

Neither party raises the issue in their briefs of whether the contractual reporting requirement in Section 1.5 of the Contract between BCBS and TennCare is the type of "request" contemplated by the second sentence of Tenn. Code Ann. § 56-53-110. It is required that the person seeking immunity be providing "requested information." In turn, Tenn. Code Ann. § 56-53-109(a) provides "when any law enforcement official or authority, any insurance department, state division of insurance fraud, or state or federal regulatory or licensing authority" requests information from an insurer then the insurer must "take all reasonable actions to provide the information requested."

First, it is clear from the record that while BCBS may have initially brought suspected fraud to the attention of the TBI, thereafter, all information was provided by BCBS to the TBI upon their request by subpoena or otherwise. Second, it is clear that BCBS was contractually obligated to report suspected fraud to the TBI. Consequently, it was clearly upon request. Third, since this objection to the application of the statutory immunity has not been raised by Ms. Craighead either below or in her brief on appeal, then Ms. Craighead may not now raise it for the first time on appeal.

Since we find that BCBS is afforded immunity under the second sentence of Tenn. Code Ann. § 56-53-110, we reverse the trial court's denial of summary judgment to BCBS on the malicious prosecution claim.

## II. STATUTE OF LIMITATIONS ON CLAIM THAT K&N SUFFERED DIMINUTION IN VALUE

BCBS argues on appeal that Ms. Craighead's claim that she is entitled to recover for diminution in value to K&N should be dismissed as barred by the three-year limitations period of Tenn. Code Ann. § 28-3-105. Under Tenn. Code Ann. § 28-3-105, any damage to property is governed by a three-year statute of limitations. On the other hand, Ms. Craighead argues that since diminution in value to K&N is a damage under her breach of contract action, then the six-year limitations period of Tenn. Code Ann. § 28-3-109 governs "actions and contracts not otherwise expressly provided for."

They are both correct. This case is unusual since Ms. Craighead is suing both in her capacity as assignee of K&N's contractual rights against BCBS and as an individual whose ownership interest in K&N was damaged. In order to decide the applicable limitation period, we must look to the "gravamen" of the complaint. *Gunter v. Lab. Corp. of America*, 121 S.W.3d 636, 638 (Tenn. 2003); *Tip's Package Store, Inc. v. Commercial Ins. Managers, Inc.*, 86 S.W.3d 543, 551 (Tenn. Ct. App. 2001). The "gravamen" of the complaint is determined on the basis of the claimed damage. *Gunter*, 121 S.W.3d at 641-42; *Tip's Package Store*, 86 S.W.3d at 551.

We will first address Ms. Craighead's claim against BCBS as assignee of K&N's claim against BCBS. For purposes of this appeal, we assume that as assignee, Ms. Craighead steps into the shoes of K&N. The gravamen of K&N's suit against BCBS is that BCBS breached its contract and K&N is entitled to damages resulting from that breach. One of the possible types of damages that may be recovered for breach of K&N's contract is diminution in value, if such damage was foreseeable at the time the parties entered into the contract.[5] Consequently, in her capacity as

---

[5]The inquiry whether diminution in value to K&N is a consequential damage that may be assessed against BCBS for breach of contract has not yet taken place in this case. Judge Cantrell succinctly described the issue thusly:

> Consequential or "special" damages are defined in *Black's* as "[s]uch damage as does not flow directly and immediately from the act of the party, but only from some of the consequences or results of such act." The rule from the venerable and familiar case of *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep.

(continued...)

assignee of K&N's contractual rights, the gravamen of her complaint is for breach of contract and the six-year limitations applies.

The same is not true of Ms. Craighead's claim for diminution in value to K&N in her individual capacity. As a former owner, Ms. Craighead is alleging that due to wrongful actions of BCBS, her property, *i.e.*, her ownership interest in K&N, was damaged. The gravamen of this action is clearly one for injury to property under Tenn. Code Ann. § 28-3-105 and is barred since the action was brought in July of 2002, nearly 4 1/2 years after she suffered the damage, *i.e.*, when she sold K&N at an allegedly diminished value.

This matter is remanded to the trial court to proceed on the remaining breach of contract claim in accordance with this opinion. Costs of this appeal are assessed against the appellee, Ms. Phyllis Craighead, for which execution may issue if necessary.

_____

PATRICIA J. COTTRELL, P.J., M.S.

---

[5](...continued)
145 (1854) states that consequential damages will only be awarded if they could reasonably be supposed to have been within the contemplation of the parties at the time of contracting, as a probable consequence of a breach of contract. The *Baxendale* rule has been seconded many times by our Tennessee courts. *See, for example, Lane v. Associated Housing Developers*, 767 S.W.2d 640 (Tenn. Ct. App. 1988); *Turner v. Benson*, 672 S.W.2d 752 (Tenn. 1984).

Several Tennessee cases have stated that our courts may allow recovery of all damages which are the normal and foreseeable results of a breach of contract. *Moore Construction Co. v. Clarksville Dept. of Electricity*, 707 S.W.2d 1 (Tenn. Ct. App. 1985); *Bush v. Cathey*, 598 S.W.2d 777 (Tenn. Ct. App. 1979); *Wilson v. Dealy*, 434 S.W.2d 835 (Tenn.1968). Such results would include both incidental damages and those consequential damages that meet the *Baxendale* test. For purposes of analysis, to say that certain results were foreseeable at the time of contracting, or that they could reasonably be supposed to have been within the contemplation of the parties would seem to be functionally equivalent.

*Wills Electric Co., Inc., v. Mirsaidi*, M2000-02477-COA-R3-CV, 2001 WL 1589119, at *4 (Tenn. Ct. App., Dec. 13, 2001). On at least one occasion the Tennessee Supreme Court has recognized that diminution in value can be a consequential damage subject to recovery. *BVT Lebanon Shopping Center, Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 135-36 (Tenn. 2001) (finding diminution in value a measure of damages for breach of a covenant of continuous occupancy).

If the trial court finds that under the circumstances presented in this case that diminution in K&N's value is recoverable for the alleged breach by BCBS, then the trial court must also consider "all factors impacting the diminution in value," 48 S.W.3d at 136, and not just the breach. Facts that may have diminished K&N's value but for which there can be no recovery include but are not limited to the termination of the contract with BCBS which Ms. Craighead agrees was not in violation of the contract and was within BCBS's contractual rights *and* any action that damaged K&N for which BCBS is immune under Tenn. Code Ann. § 56-53-110.